**Darryl S. DAVIS, Appellant,**

v.

**DIRECTOR OF REVENUE, State of Missouri, Respondent.**

No. ED 95538.

Missouri Court of Appeals,
Eastern District,
Division One.

June 28, 2011.

Shane Batchelor, Roberts, Wooten & Zimmer, LLC, Hillsboro, MO, for appellant.

Chris Koster, Atty. Gen., Jonathan H. Hale, Jefferson City, MO, for respondent.

KENNETH M. ROMINES, J.

### Background and Procedural History

This case is about what is required for a driver's refusal to submit to a breathalyzer test to be considered valid under Section 577.041[1] such that his license may be properly revoked.

On 28 February 2010, Appellant Darryl S. Davis (Appellant) was arrested on suspicion of driving while intoxicated. After being transported to the DeSoto Police Station, Appellant was read his Miranda rights, given the implied consent warning and the opportunity to contact a lawyer. The exact sequence of these events is what is at issue in this case. During the time Appellant was given to contact his lawyer, he spent approximately fifteen minutes trying to contact a lawyer, and then said to the arresting officer, "[Expletive] this. Let's get this over with."

At all times during his detention, Appellant refused to submit to a breathalyzer test. Consequently, the Director of Revenue (Director), notified him that his license

---

1. All statutory references are to RSMo (2010) unless otherwise noted.

was revoked pursuant to Section 577.041. After a hearing, the trial court affirmed the revocation, finding that Appellant had been given sufficient opportunity to contact counsel prior to refusing the breathalyzer test.

### Standard of Review

This court's review of bench-tried cases is governed by *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976). *White v. Director of Revenue*, 255 S.W.3d 571, 576 (Mo.App. S.D.2008). We will affirm the trial court's judgment unless it is not supported by substantial evidence, is against the weight of the evidence or erroneously declares or applies the law. *Id.* We review the evidence in the light most favorable to the trial court's decision. *Id.* All reasonable inferences are drawn in favor of the verdict and all contrary evidence and inferences are disregarded. *Id.* If facts are contested, we are obliged to defer to the trial court's determination of those facts. *Id.*

### Discussion

To uphold a driver's license revocation for failure to submit to chemical testing, the trial court must affirmatively find that (1) the driver was arrested, (2) the arresting officer had reasonable grounds to believe the driver was driving while intoxicated, and (3) the driver refused to submit to the test. § 577.041.4. The Director of Revenue has the burden of proof, and failure to satisfy the burden will result in reinstatement of the license to drive a motor vehicle.

*McMaster v. Lohman*, 941 S.W.2d 813, 815–16 (Mo.App. W.D.1997). Appellant does not contest Director's proof of the first two elements. Only the third element is at issue in this case. Appellant argues that he was not given the required twenty minutes to attempt to contact a lawyer after being given the implied consent warning and so his refusal was invalid.

For a refusal to be valid under 577.041, such that the Director may revoke a driver's license, the driver must have been given the Implied Consent Warning and an opportunity to contact an attorney if he so requests. *See White*, 255 S.W.3d at 580. The pertinent part of Section 577.041 reads:

> The request of the officer [to submit to a chemical test] shall include the reasons of the officer for requesting the person to submit to a test and also shall inform the person that evidence of refusal to take the test may be used against such person and that the person's license shall be immediately revoked upon refusal to take the test.

This portion of the statute is commonly referred to as the Implied Consent Warning. This section goes on to state that: "If a person when requested to submit to any test allowed pursuant to section 577.020 requests to speak to an attorney, the person shall be granted twenty minutes in which to attempt to contact an attorney." Section 577.041.1. A police officer is not obligated to inform a driver of his right to contact counsel, but a driver invokes this twenty-minute abatement period whether he requests an attorney before or after he is given the Implied Consent Warning. *Norris v. Director of Revenue*, 304 S.W.3d 724, 727 (Mo. banc 2010); *Schmidt v. Director of Revenue, State of Mo.*, 48 S.W.3d 688, 691 (Mo.App. W.D.2001). Regardless of when the driver requests to contact an attorney, the abatement period always begins after the Implied Consent Warning is given. *White*, 255 S.W.3d at 579. Even if a driver had been given the opportunity to contact a lawyer prior to the Implied Consent Warning, he must receive an additional twenty minutes after the warning. *Weil v. Director of Revenue*, 304 S.W.3d 768,

770 (Mo.App. E.D.2010). Succinctly put, for a refusal to be valid, the following sequence of events must occur *in this order:*

(1) Driver is given the Implied Consent Warning;

(2) Driver is given twenty minutes to contact an attorney if driver requested this opportunity at time any time;

(3) Twenty-minute abatement period expires or driver voluntarily abandons his efforts to contact attorney[2]; and

(4) Driver refuses to submit to chemical test.

Even if an officer fails to comply with these steps precisely, the revocation of a license may still be upheld if the Director proves that driver was not prejudiced by the officer's violation. *Schussler v. Fischer*, 196 S.W.3d 648, 653 (Mo.App. W.D. 2006).

■■■■ Appellant does not contest that he was given the Implied Consent Warning, that he was given the opportunity to contact a lawyer *at some point,* or that at all times he refused to submit to the breathalyzer test. Appellant only argues that there was no evidence that he was given twenty minutes to contact an attorney *after* being advised of the Implied Consent Warning. The issue of in what order events actually occurred is a factual one to be determined by the trial court. *See White*, 255 S.W.3d at 577.

■■■■ Contrary to Appellant's claim, there is evidence in the record, in the form of testimony from the arresting officer, that Appellant was given an opportunity to call his attorney *after* the implied consent warning:

At 1:15 he was given an opportunity to contact his attorney. I read the Implied Consent. He refused. I checked the box. At the same time that he stated he did not want to take the test he wanted to talk to his attorney and at that point and time I stopped everything, checked it at 1:15, *and then* gave him an opportunity to contact his lawyer. (Emphasis added.)

The trial court could conclude from this that Appellant was given the opportunity to contact a lawyer after he was advised of the Implied Consent Warning.[3]

■■■■ Appellant's argument really boils down to one of inconsistencies in the arrest reports and the officer's testimony. Three reports were generated as a result of Appellant's arrest. The Probable Cause Statement does not mention whether or not Appellant was given the Implied Consent Warning. The Narrative Report states that the officer requested a breath sample at the same time the Implied Consent warning was given and Appellant refused to submit. The Alcohol Influence Report states that the Appellant was advised of implied consent at 1:15 a.m. It also states that Appellant requested an attor-

---

**2.** For a more complete discussion on voluntary abandonment, see *Snider v. Director of Revenue*, 314 S.W.3d 841 (Mo.App. S.D.2010).

**3.** The fact that Appellant only actually tried to contact an attorney for approximately fifteen minutes does not save his case. Although Appellant was not given the full twenty minutes to contact his attorney, the abatement requirement was still satisfied because he voluntarily abandoned the attempt. "The twenty-minute provision is met when the person attempts to contact an attorney unsuccessfully and the twenty-minute statutory period expires, or the person abandons the attempt." *Snider*, 314 S.W.3d at 844. "Abandonment occurs where the person 'made all the attempts he or she wants to make and reaches a decision to refuse to submit to the test before the twenty minutes has elapsed.'" *Id.* (internal citations omitted). In this case, Appellant abandoned his attempt when, after trying to reach his attorney for fifteen minutes, he told the officer "[Expletive] it. Let's get this over with."

ney prior to the Warning and that the time he requested an attorney was 1:15 a.m. This report indicates no contact was made with an attorney. Finally, this report lists the time of refusal as 1:15 a.m. While the arresting officer was on the stand, the court asked the officer to clarify the sequence of events. The officer responded:

> Upon arrival [Appellant] requested to speak with an attorney. He was given contact by phone, unable to make contact, said "[Expletive] it, let's get this over with," and advised him of his implied consent, and requested that he submit a sample. He refused. And then I went straight to the Miranda and interview phase afterwards.

While the testimony and reports generated by the officer do not make the timeline of events as clear as one might hope, the resolution of contested facts is a task for the trial court. *Id.* at 576. In pursuit of that task, "[a] trial court may accept or reject all, part or none of the testimony of any witness, and this Court must defer to the ability of the trial court to judge the credibility of a witness and ascertain the facts." *Id.* In its judgment, the court specifically found that Appellant was given the required time to contact his attorney. It is apparent from that judgment that the court found the first quoted section of officer's testimony most credible. We defer to that finding. As such, the trial court did not err in denying Appellant's petition for review.

The cases cited by Appellant in support of his position are unavailing. Unlike this case, none of those cases presented a dispute about the factual situation. In all four cases[4], there was no dispute about the order or times at which events occurred. The only issue presented to the court was how Section 577.041 applied to a particular fact pattern. There is no issue of law in this case, only whether there was sufficient evidence to support the trial court's finding that Appellant was given time to contact an attorney *after* being read the Implied Consent Warning as opposed to *before*. As discussed above, there was evidence to support the court's finding on this factual issue and so we defer to its judgment.

■ Finally, it appears from the testimony relied upon by the trial court that the arresting officer checked the final refusal box *before* giving Appellant the opportunity to contact his attorney. Normally, such failure to follow the required sequence of events would result in reversal of the Director's revocation. *McMaster,* 941 S.W.2d at 817. That is because when officer checked the box, Appellant's refusal was conditional on consulting with his lawyer, and therefore was not a valid refusal at that time. *Schmidt,* 48 S.W.3d at 691. But, Director presented uncontested evidence that Appellant's attempts turned out to be futile. As such, Appellant was not prejudiced by the officer's actions. *See McMaster,* 941 S.W.2d at 817. "[T]o be entitled to relief, the driver must be actually prejudiced by the officer's failure to comply with the statute." *Schussler,* 196 S.W.3d at 651. Since Appellant was not prejudiced by officer's actions, he is not entitled to relief.

The judgment of the trial court is AFFIRMED.

ROY L. RICHTER, C.J. and
KENNETH F. THOMPSON, Sp.J., concur.

---

4. *Weil v. Director of Revenue,* 304 S.W.3d 768 (Mo.App. E.D.2010); *White v. Director of Revenue,* 255 S.W.3d 571 (Mo.App. S.D.2008); *Schussler v. Fischer,* 196 S.W.3d 648, 651 (Mo.App. W.D.2006); *McMaster v. Lohman,* 941 S.W.2d 813, 817 (Mo.App. W.D.1997).