

# In the Missouri Court of Appeals
## Eastern District

### DIVISION FOUR

| | | |
|---|---|---|
| JAMES B. STUART, | ) | No. ED103376 |
| | ) | |
| Appellant, | ) | Appeal from the Circuit Court |
| | ) | of Franklin County |
| vs. | ) | |
| | ) | Honorable David L. Hoven |
| DIRECTOR OF REVENUE, | ) | |
| | ) | |
| Respondent. | ) | FILED: May 3, 2016 |

### Introduction

James Stuart ("Stuart") appeals the judgment of the trial court sustaining the Director of Revenue's ("the Director") suspension of his driver's license. Stuart was arrested at his home several hours after he was involved in a motor-vehicle accident. Stuart was found at his home in an obviously intoxicated condition. The sole issue on appeal is whether there existed probable cause to arrest Stuart for driving while intoxicated. The record contains substantial evidence to support the trial court's finding that a prudent, cautious, and trained police officer would have found probable cause to believe Stuart drove his vehicle while intoxicated. Accordingly, we affirm the trial court's judgment.

### Factual and Procedural History

The evidence, viewed in the light most favorable to the trial court's judgment, was as follows:

On January 1, 2014, Trooper Adam Smith ("Trooper Smith") was dispatched to Route O for a report of debris in the roadway. Trooper Smith arrived at approximately 12:38 a.m. Upon arrival, Trooper Smith found a black bumper in the road, a damaged guardrail with black paint transferred onto it, seven damaged support beams, and a license plate stuck in the guardrail. Trooper Smith ran the number on the license plate, learned the plate was registered to Stuart, obtained Stuart's contact information, and immediately drove to Stuart's home. No witnesses observed the accident.

At Stuart's home, Trooper Smith found a vehicle with heavy front-end damage, a missing bumper, and a missing license plate. Stuart's wife answered the door and identified Stuart as the driver of the vehicle. Stuart's wife invited Trooper Smith inside the house, and Trooper Smith started speaking with Stuart. Trooper Smith smelled a strong odor of intoxicants on Stuart, noticed that Stuart was mumbling and slurring his speech, and saw that Stuart's eyes were watery and bloodshot. Stuart admitted that he was the driver and that he had been drinking. Trooper Smith observed Stuart swaying as he stood up and using a chair to maintain his balance. Stuart told Trooper Smith two times that he had **not** been drinking **after** he arrived home following the crash. Stuart's wife corroborated Stuart's statement to Trooper Smith.

Trooper Smith arrested Stuart for driving while intoxicated. Stuart was read the Missouri Implied Consent Law and his Miranda[1] rights. Stuart later submitted to a proper breath test, which showed his blood alcohol content to be .176% at 2:24 a.m. and .160% at 2:56 a.m.

The Director of Revenue ("the Director") suspended Stuart's driver's license, and subsequently conducted an administrative hearing at Stuart's request. The Director sustained Stuart's license suspension and Stuart requested a trial *de novo* in the trial court.

---

[1] Miranda v. Arizona, 384 U.S. 436 (1966).

2

The trial court conducted a bench trial and heard testimony from Trooper Smith, who testified to the facts outlined above. The trial court admitted the Director's certified records, including the Alcohol Influence Report, Trooper Smith's narrative, the breath result, and the maintenance report for the breath-test machine. Stuart also presented two witnesses. Stuart's first witness, his brother Steve, testified that he worked with Stuart the entire day of December 31, 2013, and that Stuart did not drink alcohol and seemed "perfectly fine" when he left work at 9:30 p.m. Stuart's second witness, his neighbor Raymond Hendrickson ("Hendrickson"), testified that Stuart arrived home at around 11:00 p.m. on December 31. Hendrickson described how he was standing in his front yard while letting his dogs out when he saw Stuart pull into the driveway next-door. Stuart then stood outside and inspected his vehicle. When Hendrickson asked what happened, Stuart explained that he had hit a deer. Hendrickson testified that he did not suspect that Stuart had been drinking. According to Hendrickson, Stuart invited Hendrickson inside and they drank alcohol for about 45 minutes. After the bench trial, the trial court issued its written Findings of Fact, Conclusions of Law, and Judgment, which found in favor of the Director. This appeal follows.

## Points on Appeal

Stuart raises two points on appeal, each effectively making the same argument. Stuart argues that the trial court misapplied the law, and that the trial court's judgment was not supported by substantial evidence and was against the weight of the evidence. Specifically, Stuart contends that Trooper Smith did not have probable cause to arrest Stuart for driving while intoxicated. Stuart asserts that the trial court improperly considered Trooper Smith's credibility as the dispositive issue, and failed to consider a reasonable assessment of the probabilities that Stuart did not consume alcohol prior to driving his car, but was intoxicated because he had consumed alcohol only after arriving at home.

3

## Standard of Review

In a court-tried civil case, we will affirm the trial court's judgment "unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law." White v. Dir. of Revenue, 321 S.W.3d 298, 307–08 (Mo. banc 2010) (citing Murphy v. Carron, 536 S.W.2d 30, 32 (Mo. banc 1976)).

We review the evidence in the light most favorable to the trial court's decision. Davis v. Dir. of Revenue, 346 S.W.3d 319, 322 (Mo. App. E.D. 2011). In doing so, we draw all reasonable inferences in favor of the verdict, and we disregard all contrary evidence and inferences. Id. "If facts are contested, we are obliged to defer to the trial court's determination of those facts." Id. A trial court is free to disbelieve any, all, or none of the contested evidence. White, 321 S.W.3d at 308. "It is only when the evidence is uncontested that no deference is given to the trial court's findings." Id. Evidence is uncontested when a party "has admitted in its pleadings, by counsel, or through the [party's] individual testimony the basic facts of [the other party's] case." Id. After giving deference to the factual determinations of the trial court, we review the trial court's probable-cause determination *de novo*. Id. at 310.

## Discussion

In both points on appeal, Stuart claims that the trial court erred in finding that Trooper Smith had probable cause to arrest him for driving while intoxicated. We collectively address both points.

To revoke Stuart's license, the Director was required to prove by a preponderance of the evidence: (1) the arresting officer had probable cause to arrest the driver for an alcohol-related offense, and (2) the driver was driving with a blood alcohol content over the legal limit of 0.08%.

4

Section 302.505[2]; White, 321 S.W.3d at 309 n.11. Stuart does not dispute that the trial court properly found the second element. The only remaining question is whether—viewing the evidence in the light most favorable to the trial court's judgment—the Director proved that Trooper Smith had probable cause to arrest Stuart for driving while intoxicated. See White, 321 S.W.3d at 309. Without a proper probable-cause finding, Stuart's license suspension cannot stand. White outlined the standard for assessing probable cause:

> The probable cause required for the suspension or revocation of a driver's license is the level of probable cause necessary to arrest a driver for an alcohol-related violation ... Probable cause, for purposes of section 302.505, will exist "when the surrounding facts and circumstances demonstrate to the senses of a reasonably prudent person that a particular offense has been or is being committed." The level of proof necessary to show probable cause under section 302.505 "is substantially less than that required to establish guilt beyond a reasonable doubt." "There is a 'vast gulf' between the quantum of information necessary to establish probable cause and the quantum of evidence required to prove guilt beyond a reasonable doubt." The trial court must assess the facts "**by viewing the situation as it would have appeared to a prudent, cautious, and trained police officer.**"

Id. (Emphasis added and internal citation omitted.)

Importantly, an officer need not actually observe a person driving to form probable cause to arrest for driving while intoxicated. Cox v. Dir. of Revenue, 37 S.W.3d 304, 307 (Mo. App. S.D. 2000). Instead, the officer can rely on circumstantial evidence. Id. "Circumstantial evidence means evidence that does not directly prove a fact in issue but gives rise to a logical inference that the fact exists." Id. (citing State v. Harris, 807 S.W.2d 528, 529 (Mo. App. W.D. 1991)). On the other hand, the officer needs more than "mere suspicion" to develop probable cause. Id. Because probable cause is such a fluid concept, it necessarily "turns on the assessment of the probabilities in particular factual contexts." Id.

---

[2] All statutory references are to RSMo (Cum. Supp. 2013).

The challenge presented here is the fact that no one saw Stuart driving his car while intoxicated. Instead, Trooper Smith based his probable-cause determination of Stuart's driving while intoxicated on his conversation with Stuart and Stuart's obvious intoxication *after* the crash. The Director produced no direct evidence that Stuart was driving while intoxicated, and Stuart now claims that he did not begin drinking alcohol until *after* he arrived at home. We agree with Stuart as he correctly points out that "mere suspicion" is insufficient to establish probable cause. Cox, 37 S.W.3d at 307. Probability and reasonableness characterize the concept of probable cause. See id.

Significantly, the record before us supports the trial court's finding that, before Stuart's arrest, Trooper Smith had more than "mere suspicion" that Stuart had been driving while intoxicated. Trooper Smith was dispatched to clear debris from a road, and he encountered an apparent one-vehicle accident with no vehicles at the scene. Using a license plate found at the scene, Trooper Smith obtained Stuart's contact information and drove to Stuart's house. At Stuart's house, Trooper Smith found a vehicle with a badly damaged front-end. Trooper Smith also found Stuart obviously intoxicated inside the house. Stuart smelled of alcohol and slurred his speech; his eyes were watery and bloodshot. Stuart admitted driving the vehicle during the crash. Importantly, Trooper Smith asked *two* times whether Stuart had consumed alcohol since arriving home after the crash, and Stuart twice said that he had not. Stuart's wife corroborated Stuart's assertion. At this point, viewing the facts most favorably to the trial court's judgment and rejecting contradicting evidence and inferences, a prudent, cautious, and trained police officer would have developed probable cause to believe that Stuart had been driving while intoxicated.

6

On appeal, Stuart contests many of the facts stated above. For example, Stuart contends that Trooper Smith's testimony revealed "inconsistencies and unreasonable conclusions." Stuart posits that we should therefore disbelieve Trooper Smith's testimony. Stuart also complains about the form of Trooper Smith's questioning of Stuart, suggesting that Stuart's responses actually demonstrated that he *had* been drinking after arriving home. Further, Stuart challenges the time frame of the incident, claiming that he arrived home and had been drinking with his neighbor for at least a few hours before Trooper Smith arrived. Stuart's factual arguments ignore our standard of review and reassert a challenge that he has already lost at the trial-court level. Finding substantial evidence in the record that support the trial court's factual findings, we must defer to those findings.

Stuart relies heavily on Mayberry v. Dir. of Revenue, 983 S.W.2d 628 (Mo. App. S.D. 1999), for the proposition that Trooper Smith did not make a reasonable assessment of the probabilities in ruling out the "far more obvious conclusion that Stuart began drinking only after returning home." In Mayberry, an officer noticed an automobile sitting in an empty shopping center and pulled into the lot to investigate. Id. at 630. As the officer approached the car, "two or three subjects" were "walking around" the parking lot. Id. The persons outside the car stated that they had gotten out of the car and were stretching their legs. Id. Mayberry was the only person sitting in the car, and he was sitting in the driver's seat. Id. The officer immediately noticed that Mayberry's speech was slurred, that his eyes were bloodshot and glassy, and that he smelled of alcohol. Id. Mayberry admitted to drinking but denied operating the car. Id. at 630–31. The officer nevertheless believed that Mayberry had been driving and arrested him. Id. The trial court found in favor of Mayberry and against the Director. Id. In affirming the trial court, the Southern District stressed the need "to view evidence and inferences therefrom in the light

7

most favorable to the prevailing party and disregard the other party's evidence except as it may support the judgment." Id. at 632. The Southern District agreed with the trial court's finding that "any reasonable assessment of the probabilities by [the officer] should have led him to view each of the car's occupants as a potential driver." Id. By focusing solely on Mayberry as the potential driver, and not attempting to rule out the possibility that one of Mayberry's companions actually drove the car, the Court found that the officer acted on "mere suspicion," and ignored concepts of reasonableness and probability. Id.

Mayberry is significantly distinguishable both procedurally and factually. Procedurally, the Court in Mayberry deferred to the trial court's factual findings and reasonable inferences about the evidence, affirming the trial court's judgment. Here, Stuart urges us to *reject* many of the trial court's factual findings and instead believe his version of events, which is the opposite of the Court's approach in Mayberry. Factually, the situation in Mayberry presented at least three other individuals at the scene, each of which the officer failed to investigate as the potential driver of the vehicle. Conversely, Stuart admitted to Trooper Smith that he was driving the car, and further told Trooper Smith that he had **not** consumed alcohol since the crash, which Stuart's wife corroborated. Stuart asserts that Trooper Smith should have sought to interview Stuart's neighbor, Hendrickson, who testified at trial that he and Stuart drank alcohol at Stuart's home for about an hour before the arrest. Unlike the officer in Mayberry, Trooper Smith had no indication when he made the arrest that Hendrickson existed or that Hendrickson had relevant information. Cain v. Dir. of Revenue, 130 S.W.3d 1, 6 (Mo. App. S.D. 2004) ("Probable cause must be determined on the basis of facts known to the arresting officer at the time of the arrest, not on the basis of facts learned later."). Trooper Smith reasonably questioned the only persons present: Stuart and his wife. Trooper Smith was not required to "possess all the information concerning

8

the offense and the arrestee's participation in it." Mayberry, 983 S.W.2d at 631. Trooper Smith made a reasonable assessment of the probabilities given the facts available to him and correctly found probable cause to arrest Stuart for driving while intoxicated.

Stuart's argument asking this Court to review the facts in the light most favorable to him ignores not only our standard of review, but the standard required for Trooper Smith to find "probable cause." "There is a 'vast gulf' between the quantum of information necessary to establish probable cause and the quantum of evidence required to prove guilt beyond a reasonable doubt." White, 321 S.W.3d at 309. Stuart fails to acknowledge two important principles of law. First, our standard of appellate review requires us to draw all reasonable inferences in favor of the trial court's verdict, and to disregard all evidence and inferences contrary to the verdict. Davis, 346 S.W.3d at 322. Second, the Director's burden in proving that Trooper Smith had "probable cause" to believe Stuart was driving while intoxicated is significantly less than proving the underlying offense at either a civil or a criminal trial. White, 321 S.W.3d at 309.

A review of the record shows that the trial court had substantial evidence to support its finding that Trooper Smith had the requisite probable cause to arrest Stuart for driving while intoxicated. The trial court did not erroneously declare or apply the law, and the trial court's judgment was not against the weight of the evidence. Accordingly, Points One and Two are denied.

<u>Conclusion</u>

The judgment of the trial court is affirmed.

_Kurt S. Odenwald_
KURT S. ODENWALD, Judge

Sherri B. Sullivan, P.J., concurs.
Lisa P. Page, J., concurs.

9