Transmission and Distribution Plant, Assessed Value   $0

STCR01789

**1825**

Cody Lane SHANKS, Appellant,

v.

DIRECTOR OF REVENUE, Respondent.

WD 80382

Missouri Court of Appeals,
Western District.

OPINION FILED: September 26, 2017

MODIFIED October 31, 2017

Application of Transfer Denied
December 19, 2017

Timothy D. Tipton, Excelsior Springs, MO and Bruce B. Brown, Kearney, MO, for appellant.

Rachel M. Jones, Jefferson City, MO, for respondent.

Before Division Three: Alok Ahuja, Presiding Judge, Thomas H. Newton, Judge and Cynthia L. Martin, Judge

Cynthia L. Martin, Judge

Cody Shanks ("Shanks") appeals from a judgment sustaining the Director of Revenue's suspension of his driving privileges. Shanks argues that the Director of Revenue failed to establish that the arresting officer had probable cause to arrest Shanks for driving while intoxicated. Specifically, Shanks claims that the Director of Revenue failed to present evidence demonstrating a temporal connection between Shanks's admitted operation of a motor vehicle and his observed intoxication at the time of the arrest. We affirm.

**Factual and Procedural History**

On April 4, 2016, at approximately 7:15 a.m., Clinton County Sheriff's Department Deputy David Parker ("Deputy Parker") was notified of a vehicle crash at 240th Street, west of Tri-County Line Road in Lathrop, Missouri. Upon arriving at the scene, Deputy Parker saw a Gran Torino angled toward the ditch. The vehicle, which was registered to Shanks, had partially knocked over a mailbox. Deputy Parker approached the vehicle and observed Shanks passed out behind the steering wheel, slumped over with his head in the passenger's seat. The keys were in the ignition, but the engine was not running.

Deputy Parker woke Shanks. When Deputy Parker asked Shanks where he was coming from, Shanks responded, "Japan." Shanks told Deputy Parker that he had been drinking the previous night. Shanks told Deputy Parker that while driving, he hit a loose patch of gravel, lost control of the vehicle, and hit the mailbox. Shanks told Deputy Parker he was unable to move his vehicle.

Deputy Parker testified that Shanks had a moderate odor of alcoholic beverages coming from his person, and that Shanks's eyes were glassy, watery, and bloodshot. Deputy Parker further testified that Shanks's balance was uncertain and that Shanks's speech was slurred.

Shanks agreed to submit to a preliminary breath test, which indicated a positive

presence of alcohol. Shanks submitted to field sobriety testing. The horizontal gaze nystagmus test indicated that Shanks exhibited six of six possible clues of impairment. The walk-and-turn test revealed that Shanks exhibited seven of eight possible clues of impairment. Finally, the one-leg stand test revealed that Shanks exhibited four of four possible clues of impairment. Based on his training, past experience, and observations of Shanks, Deputy Parker believed Shanks was intoxicated. As a result, Deputy Parker placed Shanks under arrest for driving while intoxicated.

Deputy Parker transported Shanks to the police station in Cameron, Missouri, where Shanks gave his consent to submit to an evidentiary breath test. That test indicated that Shanks had a blood alcohol concentration of .22 percent per weight.

Following an administrative hearing, Shanks's driver's license was suspended pursuant to section 302.505.[1] Shanks filed a petition for a trial *de novo* in Clinton County. At trial, the Director of Revenue presented testimony from Clyde Smith, Jr. ("Smith"), who lived near the site of the accident, and from Deputy Parker.

Smith testified that although he knew the accident took place on the morning of April 4, 2016, he did not know at what time the accident occurred. Smith also testified that he did not notice any alcoholic beverage containers near or around the accident scene on the morning of the accident, though he did find four beer cans near the pasture two or three days later.

Deputy Parker testified about his observations and interactions with Shanks leading up to Shanks's arrest. Deputy Parker testified that he did not recall seeing any alcoholic beverage containers near the accident scene when he arrested Shanks. Deputy Parker testified that he did not

know when Shanks's accident occurred, or how much Shanks had to drink before the accident. Deputy Parker testified that he did not know whether Shanks drank any alcoholic beverages after the accident.

The Director of Revenue submitted a certified copy of the alcohol influence report and supporting documents into evidence. The alcohol influence report and supporting documents revealed that Deputy Parker interviewed Shanks after he conducted an evidentiary breath test at the police station. During this interview, Shanks stated that "he had recently come back from active duty with the Marine Corps where he had been deployed for the past two years." According to Shanks, "everyone wanted to be around him and buy him a drink and things got out of hand for him."

Shanks testified on his own behalf. Shanks testified that he began driving the Gran Torino at approximately 1:00 a.m. on April 4, 2016, and that while he was driving, the vehicle's headlights shut off, causing him to slam on the brakes. Shanks said he then hit a loose patch of gravel and lost control, causing the vehicle to come to a stop in a ditch after hitting a mailbox. Shanks testified that his accident occurred around 2:00 to 2:30 a.m. Shanks testified that he unsuccessfully attempted to push the car out of the ditch. Shanks did not have a phone to call for help, so he "drank about 18 beers waiting for someone to stop." Shanks testified that, before the accident, the last alcoholic beverage he consumed was at 5:00 p.m. on April 3, 2016.

The trial court entered its findings of fact, conclusions of law, and judgment ("Judgment") sustaining the Director of Revenue's suspension of Shanks's driver's license. The Judgment found that the evidence presented by the Director of Reve-

---

1. All statutory references are to RSMo 2016     as supplemented unless otherwise indicated.

nue was credible. The Judgment found that there was probable cause, based on the facts known to Deputy Parker prior to arrest, to arrest Shanks for an alcoholic-related traffic offense. In particular, the Judgment found that Shanks admitted to driving a motor vehicle when the accident occurred and admitted to drinking before driving. The Judgment further found that Shanks was driving with a blood alcohol concentration of .08 percent or higher.

Shanks appeals.

## Standard of Review

We review the trial court's judgment, not the administrative order suspending or revoking driving privileges. *McMillin v. Director of Revenue,* 520 S.W.3d 513, 515 (Mo. App. W.D. 2017). Trial court's judgments in driver's license suspension and revocation cases are reviewed as in any other court-tried civil case. *White v. Director of Revenue,* 321 S.W.3d 298, 307 (Mo. banc 2010). We will affirm the trial court's judgment "unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law." *Id.* at 307-08. To set aside a judgment as against the weight of the evidence, we must have a firm belief that the judgment is wrong. *Id.* at 308.

[5, 6] We review a trial court's probable cause determination by establishing the facts and applying the law to those facts. *Id.* at 310.

> The first part of the analysis involves only a determination of the historical facts, but the second is a mixed question of law and fact: The historical facts are admitted or established, the rule of law is undisputed, and the issue is whether the facts satisfy the relevant statutory or constitutional standard, or to put it another way, whether the rule of law as

applied to the established facts is or is not violated.

*Id.* Thus, we "review[ ] probable cause determinations de novo under an abuse of discretion standard and give[ ] deference to the inferences the trial court made from the historical facts, including the trial court's credibility determinations." *Id.*

## Analysis

Shanks raises a single point on appeal. He argues that the trial court erred in concluding that the Director of Revenue established by a preponderance of the evidence that Deputy Parker had probable cause to arrest Shanks for driving while intoxicated. Shanks claims that the uncontested facts establish that the Director of Revenue failed to produce evidence demonstrating "a temporal connection between [Shanks's] admitted driving at the time of the accident and the officer's observed intoxication at the time of the arrest." [Appellant's Brief, p. 9]

To establish a prima facie case for suspension of a driver's license pursuant to section 302.505.1, the Director of Revenue "must present evidence that, at the time of the arrest: (1) the driver was arrested on probable cause for violating an alcohol-related offense; and (2) the driver's [blood-alcohol concentration] exceeded the legal limit of .08 percent." *O'Rourke v. Director of Revenue,* 409 S.W.3d 443, 447 (Mo. App. E.D. 2013). Shanks challenges only the sufficiency of the evidence to establish the first of these essential elements.

The probable cause necessary to suspend a driver's license is the level of probable cause necessary to arrest a driver for an alcohol-related offense. *White,* 321 S.W.3d at 309. "Probable cause to arrest exists when an arresting officer's knowledge of particular facts and circumstances is sufficient to warrant a prudent person's belief that a suspect has commit-

ted an offense." *Stolle v. Director of Revenue*, 179 S.W.3d 470, 471 (Mo. App. E.D. 2005). "Probable cause must exist at the time of the arrest," such that the Director of Revenue may not rely on information an officer discovers subsequent to an arrest to establish probable cause. *Domsch v. Director of Revenue*, 767 S.W.2d 121, 123 (Mo. App. W.D. 1989).

"The level of proof necessary to show probable cause under section 302.505 is substantially less than that required to establish guilt beyond a reasonable doubt." *White*, 321 S.W.3d at 309. In determining whether the officer had probable cause, we must view the situation as it would have appeared to "the prudent, cautious, and trained police officer." *Stolle*, 179 S.W.3d at 471.

An officer does not have to observe a person driving to form probable cause to arrest for driving while intoxicated. *Stuart v. Director of Revenue*, 488 S.W.3d 743, 747 (Mo. App. E.D. 2016). Instead an arresting officer may determine that there is probable cause to believe a person was driving from the person's admissions alone. *McFall v. Director of Revenue*, 162 S.W.3d 526, 531 (Mo. App. S.D. 2005). Further, the officer may rely on circumstantial evidence. *Stuart*, 488 S.W.3d at 747. "'Circumstantial evidence means evidence that does not directly prove a fact in issue but gives rise to a

logical inference that the fact exists.'" *Id.* (quoting *Cox v. Director of Revenue*, 37 S.W.3d 304, 307 (Mo. App. S.D. 2000)).

Here, Deputy Parker's determination that probable cause existed to arrest Shanks for driving while intoxicated turned on his assessment of the unique facts before him. The evidence presented by the Director of Revenue, which the trial court found credible,[2] demonstrated that, when Deputy Parker arrested Shanks on the morning of April 4, 2016, Deputy Parker knew: (1) the Gran Torino was in a ditch due to an accident that knocked down a nearby mailbox; (2) Shanks was behind the wheel, passed out, at the time Deputy Parker arrived on the scene; (3) Shanks admitted to driving the Gran Torino at the time of the accident; (4) Shanks admitted that he had been drinking the previous night; (5) Shanks exhibited physical characteristics of intoxication, and a preliminary breath test and field sobriety tests revealed that Shanks was intoxicated; and (6) Deputy Parker did not observe any discarded alcoholic beverage containers or other evidence that might suggest that Shanks had access to alcohol or had been drinking after the accident. Shanks's admissions, combined with Deputy Parker's observations permit the reasonable inference that it was probable that Shanks was intoxicated at the time the accident occurred.[3]

2. Shanks argues that the evidence before the trial court was uncontested so that we need not defer to the trial court's assessment of the evidence and instead give no deference to the trial court's findings. We disagree. "[A] party contests an issue by contesting the evidence," whether through presenting evidence to the contrary, using cross-examination, or pointing out internal inconsistencies in the evidence. *White*, 321 S.W.3d at 308. Here, Shanks used his cross-examination of Deputy Parker to call into question his credibility by highlighting that Deputy Parker did not ask

Shanks when the accident occurred, when Shanks drank the night before, and how much Shanks had drank. Thus, the evidence was contested, and we defer to the trial court's assessment of the evidence. *Id.*

3. Shanks's point relied on argues that, at most, the Director of Revenue "proved that [Deputy Parker] had probable cause to believe that [Shanks] was only in actual physical control of the vehicle, which does not subject a person to [section] 302.505." [Appellant's Brief, p. 9] This argument stems from the fact that Deputy Parker never observed Shanks

Shanks disagrees, relying on *State v. Hatfield*, 351 S.W.3d 774 (Mo. App. W.D. 2011). In *Hatfield*, we reversed a **criminal** conviction of driving while intoxicated where there was insufficient evidence "to establish beyond a reasonable doubt that [a driver] drove his vehicle while intoxicated" because the state did not present any "evidence linking in time the defendant's intoxication to the operation of a motor vehicle." *Id.* at 775, 778 (emphasis omitted). We ultimately concluded in *Hatfield* that:

Hatfield's mere intoxication near his vehicle, without evidence establishing when he last operated it, is insufficient to support his conviction for driving while intoxicated. Missouri courts have made clear that the State must present evidence *linking in time* the defendant's intoxication to the operation of a motor vehicle. Time is an element of importance that the state must prove to sustain its burden to show that a driver drove while intoxicated. Where intoxication is observed at a time separate from the operation of a motor vehicle, a factfinder cannot determine that one who is under the influence of an alcoholic beverage at an established time was necessarily in that condition at some earlier unspecified moment without any evidence concerning the length of the interval involved.

*Id.* at 778 (citations omitted).

Shanks's reliance on *Hatfield* is unavailing. Shanks is not contesting the sufficiency of the evidence to support a criminal conviction for driving while intoxicated beyond a reasonable doubt. He has

contested only the sufficiency of the evidence to find probable cause to arrest him for driving while intoxicated, an element of a prima facie case for suspension of a driver's license. "There is a vast gulf between the quantum of information necessary to establish probable cause and the quantum of evidence required to prove guilt beyond a reasonable doubt." *White*, 321 S.W.3d at 309. "It is not necessary that the arresting officer possess all of the information concerning the offense and the arrestee's participation in it, in order to form a belief amounting to probable cause." *Howard v. McNeill*, 716 S.W.2d 912, 915 (Mo. App. E.D. 1986). Instead, "probable cause is ... a fluid concept [that] necessarily 'turns on the assessment of the probabilities in particular factual contexts.'" *Stuart*, 488 S.W.3d at 747 (quoting *Cox*, 37 S.W.3d at 307).

In *Howard v. McNeill*, a driver's license suspension case, an officer arrived on the scene of a two-vehicle accident approximately twenty-five minutes after receiving a report of the accident. 716 S.W.2d at 913-14. By then, one of the drivers involved in the accident had left the scene, purportedly to seek medical attention. *Id.* at 914. That driver was located fifty to sixty minutes after the accident when an officer saw a vehicle matching the description of the vehicle which left the scene of the accident. *Id.* When the officer stopped the vehicle, the driver at the time of the accident was now a passenger in the vehicle, and appeared "very intoxicated." *Id.* The officer placed the individual under arrest for driving while intoxicated at the time of the

driving and instead found Shanks passed out, slumped behind the steering wheel of the vehicle when he arrived on the scene. Deputy Parker's testimony clearly established that Shanks told Deputy Parker that he was driving at the time of the accident. Because we conclude that Shanks's admissions and Depu-

ty Parker's observations create an inference that it was probable that Shanks was intoxicated at the time the accident occurred, we must also reject Shanks's argument that the Director of Revenue proved, at most, that Shanks was in actual physical control of the vehicle, not driving, when he was intoxicated.

accident. *Id.* The defendant later testified that he was intoxicated at the time of arrest because he drank a substantial amount of alcohol after the accident. *Id.* This exculpatory fact had not been reported to the arresting officer. *Id.*

In addressing whether probable cause existed to support the arrest, the Eastern District observed that probable cause does not require an officer to have all of the information about an offense and the driver's participation in the offense at the time of an arrest. *Id.* at 915. The officer knew prior to making an arrest that the arrested driver had been operating the vehicle involved in the accident; that the driver left the scene of the accident purportedly to seek medical attention though he never went to the hospital; that the driver was very intoxicated when encountered by the officer an hour after leaving the scene of the accident; and that the driver did not advise the arresting officer that he had consumed alcohol after the accident. *Id.* The court concluded that these facts were sufficient to establish that the officer had probable cause to believe that the driver was intoxicated at the time of the accident. *Id.* "This would seem abundantly true where, as here, the arrestee and his friend failed to offer the potentially exculpatory fact of respondent's heavy drinking after the collision." *Id.*

*McFall v. Director of Revenue*, also a driver's license suspension case, applied the logic of *McNeill* to reach a similar conclusion with respect to probable cause. In *McFall*, a vehicle hit a pedestrian in front of a bar at approximately 1:20 a.m. 162 S.W.3d at 529. A highway patrolman responded to the scene at 1:57 a.m. *Id.* That officer was informed by other law enforcement officers that a minivan struck the pedestrian and drove away. *Id.* Several patrons told the authorities that McFall owned and was driving the minivan at the

time of the accident. *Id.* The highway patrolman went to McFall's residence and observed that McFall was displaying indicators of intoxication. *Id.* McFall told the highway patrolman that the minivan was at his boss's house. *Id.* When the highway patrolman went to the boss's home, he found the minivan, but he was told that McFall had driven the minivan to that location at approximately 1:30 a.m. and had asked the boss to "hide it." *Id.* The highway patrolman returned to McFall's house at 2:40 a.m. *Id.* McFall admitted to the highway patrolman that he drove the minivan to his boss's residence but stated he did not remember driving the vehicle in front of the bar earlier in the evening. *Id.* The highway patrolman arrested McFall for driving while intoxicated. *Id.*

The court determined that the record showed the following before McFall's arrest for driving while intoxicated:

> (a) Driver, as in *McNeill*, immediately left the crash scene; (b) Driver first hid the minivan involved in the accident and then fled to his home; (c) as in *McNeill*, within an hour of the collision [the highway patrolman] detected Driver had a strong odor of intoxicants on his breath and his eyes were glassy, bloodshot and staring, which are recognized indicia of intoxication; and, (d) Driver, as in *McNeill*, did not inform [the highway patrolman] that he had been drinking alcoholic beverages subsequent to his involvement in the crash.

*Id.* at 532 (footnotes omitted). The court found that "the gap in time between the accident and the arrest did not adversely affect the probable cause determination because '[the Director of Revenue] is not required to prove the time an accident occurred' in situations such as these." *Id.* (quoting *Misener v. Director of Revenue*, 13 S.W.3d 666, 668 (Mo. App. E.D. 2000)). Thus, the court held that there was suffi-

cient evidence for the trial court to conclude that the highway patrolman had probable cause to arrest McFall for driving while intoxicated. *Id.* at 533.

Deputy Parker, like the officer in *McNeill* and the highway patrolman in *McFall,* did not need to know all of the information pertinent to Shanks's charged offense to form the belief that probable cause existed to arrest Shanks for driving while intoxicated. While Deputy Parker did not know when the accident occurred relative to Shanks's arrest, the Director of Revenue is not required to prove when an accident occurred to establish that probable cause existed to make an arrest for driving while intoxicated. *McFall,* 162 S.W.3d at 531. Though Shanks testified at trial that, after his accident, he drank eighteen beers while waiting for someone to stop at the accident scene to help him, as in *McNeill,* Shanks did not make this exculpatory claim when confronted by Deputy Parker at the scene of the accident, and Deputy Parker saw no evidence at the scene suggesting Shanks had access to or had consumed alcohol after the accident. Instead, Deputy Parker found Shanks passed out in the car, with no empty alcoholic beverages in or near the car. And Shanks admitted to Deputy Parker that he had been drinking the previous evening.[4] The trial court did not err in concluding that the Director of Revenue prevented sufficient evidence to establish that Deputy Parker had probable cause to arrest Shanks for driving while intoxicated.

Shanks does refer our attention to two cases, *Stolle* and *Domsch,* where it was determined that the evidence was insufficient to establish probable cause to arrest for driving while intoxicated. Both cases are readily distinguishable from this case. In *Stolle,* an officer responded to the scene of a one-vehicle accident and found an unoccupied vehicle with front-end damage. 179 S.W.3d at 471. The officer went to the registered owner's house, finding the driver and her mother. *Id.* at 472. The driver told the officer that she had consumed two or three beers, but the officer did not know whether the driver had done so before or after the accident. *Id.* "Further, there was no explicit or tacit understanding as to when [the driver] consumed the beer." *Id.* We concluded that the Director of Revenue failed to present evidence sufficient to establish probable cause to believe that the driver was driving while intoxicated. *Id.* Unlike *Stolle,* Shanks told the officer when he had been drinking the previous evening, and thus before the accident, and there was no evidence at the scene to suggest that Shanks had consumed alcohol after the accident.

*Domsch* is also distinguishable. There, the officer responded to a two-vehicle accident scene to find that one of the drivers had left the scene. 767 S.W.2d at 122. The officer later found a vehicle matching the description of the vehicle that left the scene. *Id.* The vehicle was in a restaurant parking lot, so the officer entered the restaurant and spoke with the driver. *Id.* Upon smelling a strong odor of alcoholic beverages on the driver's breath and observing that the driver had an unsteady balance, the officer arrested the driver for driving while intoxicated. *Id.* The court concluded that "at the time of [the driver's] arrest, [the officer] could not have known [the driver's] condition at the time of the accident" because he "had the better part of one hour and forty minutes to

---

4. Moreover, Shanks never advised Deputy Parker of this exculpatory information after he was arrested. Instead, during a post-arrest interview, Shanks told Deputy Parker that he

had recently returned from being deployed for two years. Shanks told Deputy Parker that "everyone wanted to be around him and buy him a drink and things got out of hand."

obtain alcohol." *Id.* at 123-24. Thus, the court concluded that the Director of Revenue failed to prove that there was probable cause to believe that the driver was intoxicated at the time of the accident because there was no evidence that the driver did not have access to alcohol during the intervening time. *Id.* at 124. Here, unlike *Domsch*, Shanks never left the scene of the accident, Shanks reported before his arrest that he had been drinking before the accident, and Deputy Parker observed nothing at the scene of the accident to suggest that Shanks had access to, or had consumed any alcohol after, the accident.

▮ Finally, Shanks argues that we must reverse because in finding that probable cause existed to support Deputy Parker's arrest of Shanks, the trial court referred to information found in the alcohol influence report and supporting documents, and thus to information that Deputy Parker did not know at the time of the arrest. While it is true that a trial court's probable cause determination must be based on information known to an officer at the time of an arrest, we cannot say that the trial court committed legal error in referring to the alcohol influence report and supporting documents. Notwithstanding the alcohol influence report and supporting documents, it is uncontested that before arresting Shanks, Deputy Parker knew that Shanks had been drinking the night before the accident. Shanks's repeated admission to the same effect, described in greater detail in the alcohol influence report and supporting documents, was merely cumulative of the information Deputy Parker already possessed at the time of the arrest. The trial court's reference to the alcohol influence report and supporting documents in connection with the Judgment's discussion of probable cause to arrest was harmless error. *See* Rule 84.13(b) ("No appellate court shall reverse any judgment unless it finds that error was committed by the trial court against the appellant materially affecting the merits of the action.").

Shanks's point on appeal is denied.

### Conclusion

We affirm the trial court's Judgment.

All concur