SHERRI B. SULLIVAN, P.J.
Introduction
Michael Mannino (Appellant) appeals from the trial court's judgment upholding the administrative revocation of his driving privileges for refusing to consent to a chemical test of his breath for alcohol content pursuant to Missouri's Implied Consent Law, Section 577.041.[1] ,[2] We affirm.
Background
On February 7, 2016 at 9:31 p.m., St. Louis County Police Officer Michael Kiefer (Officer Kiefer) received a call for a motor vehicle accident on westbound I-270 near the Washington/Elizabeth exit. Upon his arrival at the scene, he observed a 2010 Dodge Ram off of the roadway, resting against and on the metal guardrail just before the exit ramp. The driver was no longer present. While processing the crash scene, Officer Kiefer was informed by the 911 dispatcher that she had again made contact with the caller who had reported the accident, who stated she had seen the driver leave the scene wearing a black hoodie and pants. Officers began canvassing the area, looking for an individual matching this description.
One officer inquired at the nearby Taco Bell. Employees there advised the officer an individual matching that description had recently come in, ordered a bean burrito, and left. They told that officer which direction the individual had gone. Several minutes later a third officer, Officer Steve Beekman (Officer Beekman), saw an individual matching the description in front of Walgreens, a short distance from Taco Bell. Officer Beekman informed Officer Kiefer this individual appeared to be highly intoxicated and he had keys to a Dodge vehicle in his pocket. This individual, identified as Appellant, was taken into custody for leaving the scene of an accident, as well as suspicion of driving while intoxicated.
After being placed in Officer Beekman's vehicle, Appellant stated he was going through a rough time in his life, and he would not have crashed if another vehicle had not forced him into the guardrail. Officer Beekman transported Appellant to the station and placed him in booking to await *670 the arrival of Officer Kiefer, who was finishing processing the crash site.
Upon Officer Kiefer's arrival, he noticed that Appellant smelled strongly of alcohol. He observed his eyes were extremely bloodshot, watery, and staring. His balance was uncertain and swaying, and his speech was incoherent and mumbling. Officer Kiefer had Appellant perform a series of field sobriety tests: the Horizontal Gaze Nystagmus test, the Walk-and-Turn test, and the One Leg Stand test. The results of all three tests indicated Appellant was intoxicated.
During this time, Appellant made conflicting statements regarding the circumstances of the crash. At first, he indicated he had been in the vehicle alone. Later he told officers his girlfriend had been driving but when asked her identity, he said, "Shenekwa or Shannena. Whatever you want it to be." Appellant's girlfriend, identified as Kristen Laughlin, retrieved Appellant from the station later that evening. She denied being present in the vehicle at the time of the accident.
Appellant was read his Miranda rights, and informed of Missouri's Implied Consent Law. Appellant was unable to contact a lawyer, and refused to consent to a chemical test of his breath for alcohol content. Officer Kiefer informed Appellant he was being charged with Driving While Intoxicated (DWI).
Under Missouri's Implied Consent Law, Appellant's driver's license was revoked by the Director of Revenue (Director) for one year upon his refusal to submit to the chemical test. Pursuant to Section 577.041.4, Appellant petitioned for a trial de novo on said revocation. On September 27, 2017, a hearing was held to review the Director's revocation of Appellant's license.
At the hearing, the Director offered into evidence one exhibit consisting of several documents, including the Crash Report, the Alcohol Influence Report, and Officer Kiefer's narrative of the arrest. Appellant's counsel announced he had no objection to the admission of the Director's exhibit. Appellant offered no evidence of his own. Instead, Appellant's counsel provided the following argument: "Your Honor, the only argument we'd make is there's no evidence of operation or that Mr. Mannino was driving. He's not found to be driving, denies driving at one point and that's it."
The trial court denied the relief prayed for in Appellant's petition for review, and sustained the order of the Director revoking Appellant's license. The court did not include any specific findings of fact in its order. This appeal follows.
Points Relied On
Appellant makes two points on appeal. In his first point, Appellant states the trial court erred in finding the Director had established by a preponderance of the evidence that Officer Kiefer had reasonable grounds to arrest Appellant for DWI. In his second point, Appellant claims the trial court should have applied the exclusionary rule and suppressed portions of the evidence offered by the Director to establish reasonable grounds for Appellant's arrest.
Standard of Review
In reviewing a court-tried case, we will uphold the trial court's judgment unless the judgment is not supported by substantial evidence, is against the weight of the evidence, or erroneously declares or applies the law. Velluto v. Dir. of Revenue, 383 S.W.3d 14, 17 (Mo. App. E.D. 2012). We view the evidence in the light most favorable to the judgment and defer to the trial court's assessment of the evidence and the credibility of witnesses. Id."Though we give deference to the court's credibility determinations, probable cause is a legal question for which we review *671 without deference to the court's judgment." Id. [3]
Discussion
We read Appellant's first point on appeal as contesting the sufficiency of evidence to support the trial court upholding his license revocation.
At a hearing to review a license revocation pursuant to Section 577.041, the issues are limited to: (1) whether or not the person was arrested or stopped; (2) whether or not the officer had reasonable grounds to believe the person was driving a motor vehicle while in an intoxicated condition; and (3) whether or not the person refused to submit to an allowed test. Hinnah, 77 S.W.3d at 620. Both parties to this appeal concede the first and third determinations are not at issue here. The issue then is whether Officer Kiefer had reasonable grounds to believe Appellant had driven a motor vehicle in an intoxicated condition.
"Whether there is probable cause to arrest depends on the information in the officer's possession prior to the arrest." Id. at 621. "Reasonable grounds, therefore, must be based on information in the officer's possession at the time of the arrest, not on information acquired after the fact." Jones v. Dir. of Revenue, 204 S.W.3d 709, 712 (Mo. App. W.D. 2006). Thus, in order to determine whether there were reasonable grounds to arrest Appellant for DWI, we must determine at what point Appellant was arrested for DWI.
Appellant insists his arrest for DWI occurred when Officer Beekman took him into custody outside of Walgreens near the scene of the accident. We disagree. The record clearly shows he was being arrested for leaving the scene of the accident. He was merely under "suspicion" of having driven while intoxicated. His arrest for DWI did not take place until later at the station, after he had made several incriminating statements to the officers, failed three field sobriety tests, and refused to submit to a chemical test of his breath. Whether or not the initial stop outside of Walgreens was supported by probable cause to believe he had committed DWI, or even leaving the scene of the accident for that matter, is immaterial. "Section 577.041 does not require the officer to have probable cause to believe the person was driving while intoxicated when the officer makes the initial stop or arrests the driver for other violations." Guhr v. Dir. of Revenue, 228 S.W.3d 581, 584 (Mo. banc 2007) (overruled on other grounds).
Had Appellant established, or even argued, to the trial court that his first stop outside of Walgreens was the moment of his actual arrest for DWI, the result here may well be different. However, we cannot, on this record, entertain this view. As stated above, the evidence admitted - to which Appellant stated he had no objection, and offered no evidence himself to dispute - fully supports a determination that Appellant was arrested for DWI by Officer Kiefer at the station. The arrest occurred well after he was initially taken into custody for leaving the scene of an accident, as well as after both Officers Beekman and Kiefer had numerous indications Appellant was intoxicated, and was driving the crashed Dodge truck. Here, while the trial court did not make a specific finding of fact on this, or any, point, we must assume all facts were found in accordance with the result reached, and disregard any contrary inferences. Rule 73.01 (c)[4] ; Hinnah, 77 S.W.3d at 621.
*672 What remains is to determine whether, at the time of Appellant's arrest for DWI, Officer Kiefer had probable cause to arrest him for DWI.
"Probable cause to arrest exists when an arresting officer's knowledge of particular facts and circumstances is sufficient to warrant a prudent person's belief that a suspect has committed an offense." Stolle v. Dir. of Revenue, 179 S.W.3d 470, 471 (Mo. App. E.D. 2005). "We must determine whether the officer had probable cause by viewing the situation as it would have appeared to the prudent, cautious, and trained police officer." Id. We have already covered the numerous indications Officer Kiefer had that Appellant was the individual driving the Dodge truck when it crashed, and he was intoxicated at the time: he matched the description given by the 911 caller of the driver, was found a short distance away with a Dodge key in his pocket, appeared to be intoxicated a short time after the crash, indicated he had been in the vehicle alone while also giving incredible conflicting stories of what happened, indicated he had been driving by referring to the circumstances of the crash, failed three field sobriety tests, and refused to take a chemical test of his breath for alcohol. In this Court's view, this is more than enough for a reasonably prudent officer to conclude that Appellant had committed DWI.
Appellant urges this Court nonetheless to find that probable cause could not exist to arrest him where the only individual who actually saw him driving the vehicle was the unidentified 911 caller. This argument is unpersuasive.
For one, it is well established there is no requirement that officers personally observe someone drive a vehicle before they may arrest them for DWI. See, e.g. , Stuart v. Dir. of Revenue, 488 S.W.3d 743, 747 (Mo. App. E.D. 2016). "Instead, the officer can rely on circumstantial evidence." Id. We will not again retread the circumstantial evidence that Appellant was driving the wrecked Dodge truck.
Second, Appellant cites a line of cases regarding police reliance on anonymous tipsters in forming a basis to stop a suspect for investigation, chiefly Florida v. J.L., 529 U.S. 266, 120 S.Ct. 1375, 146 L.Ed.2d 254 (2000). In J.L., an anonymous caller informed police that a young black male standing at a bus stop was carrying a gun. Id. at 268, 120 S.Ct. 1375. Relying on that tip alone, police stopped and frisked a young man matching that description. Id. The J.L. Court held that the anonymous tip, without some further indicia of reliability, was insufficient alone to justify the stop. Id. at 271, 120 S.Ct. 1375. Appellant's reliance on these cases is misplaced, in no small part because Appellant conflates unidentified with anonymous. While the record here is silent as to the 911 caller's identity, nothing in the record indicates the caller was anonymous. In fact, the record shows the 911 dispatcher again made contact with the caller after the initial call. The U.S. Supreme Court has noted in similar circumstances that the ability of 911 operators to garner identifying information from 911 callers precludes their characterization as "anonymous sources." Navarette v. California, 572 U.S. 393, 400, 134 S.Ct. 1683, 188 L.Ed.2d 680 (2014) ("A 911 call has some features that allow for identifying and tracing callers, and thus provide some safeguards against making false reports with immunity.").[5]
Point I is denied.
*673 In his second point, Appellant claims an analysis of all of the evidence contained in the Director's exhibit admitted at the hearing is inappropriate to determine Point I, because some of that evidence was collected in violation of Appellant's constitutional rights and is thus subject to suppression. It is important to note that Appellant did not present this argument to the trial court. In fact, not only did Appellant not object to the introduction of the evidence, he affirmatively stated he had no objection when the exhibit was offered. "An announcement of 'no objection' amounts to an affirmative waiver of appellate review of the issue." State v. Markham, 63 S.W.3d 701, 707-08 (Mo. App. S.D. 2002). "Under those circumstances, even plain error review is not warranted." Id.
Even if this Court were to review this claim, it is without merit. Simply put, the exclusionary rule does not apply in civil license revocation proceedings in Missouri. Garriott v. Dir. of Revenue, 130 S.W.3d 613, 615 (Mo. App. W.D. 2004) ; see also Riche v. Dir. of Revenue, 987 S.W.2d 331, 336 (Mo. banc 1999) (suppression unwarranted in civil license revocation, where costs of excluding evidence outweigh benefits of exclusionary rule).
Because it is both unreviewable and without merit, Point II is denied.
Conclusion
The judgment of the trial court is affirmed.
Lawrence E. Mooney, J., and James M. Dowd, J., concur.

All statutory references are to RSMo Cum. Supp. 2013 unless otherwise noted.

Appellant's brief incorrectly cites Section 302.500 as the basis for his license revocation. The Notice of Revocation received by Appellant, contained in the appendix to his brief, states clearly the revocation stems from his refusal to submit to an alcohol test under Missouri's Implied Consent Law, and his license was suspended under Section 577.041.

In the context of Section 577.041 hearings, "reasonable grounds" and "probable cause" are synonymous. Hinnah v. Dir. of Revenue, 77 S.W.3d 616, 620 (Mo. banc 2002).

All rule references are to Mo. R. Civ. P. (2016).

Appellant seeks to bolster his argument by citing State v. Miller, 894 S.W.2d 649 (Mo. banc 1995). Appellant's reliance on this case is also misplaced. Miller did not involve an anonymous tipster. Rather, the Miller court held the tip on which police relied when stopping the defendant was not reliable, where the state did not provide any evidence of the tip's source at a suppression hearing; thus, the state did not meet their evidentiary burden to show the defendant's motion to suppress should be denied. Id. at 653. By contrast, in the instant case the Director provided evidence of the source of the tip which provided part of the basis for Appellant's stop.