Cynthia L. Martin, Judge
The Director of the Department of Revenue ("Director") appeals the trial court's judgment setting aside the suspension of Cole M. Boggs's ("Boggs") driving privileges pursuant to section 302.505.[1] The Director argues that the trial court erroneously applied the law by ignoring Boggs's admission that he did not consume any alcohol after an accident. We affirm the trial court's judgment.
Factual and Procedural History
At 2:07 a.m. on March 1, 2016, a Missouri State Highway Patrol trooper was dispatched to the scene of a single-vehicle accident. The trooper arrived on the scene at approximately 2:37 a.m. The trooper determined that the vehicle had rolled into a ditch after the driver swerved and overcorrected. The vehicle was significantly *696 damaged, and there was blood inside the vehicle suggesting that the driver sustained injuries. However, the driver was not present at the scene of the accident. The trooper found no alcohol containers in or around the vehicle.
The vehicle's owner was identified as Boggs through registration records. A Henry County sheriff's deputy made first contact with Boggs at his residence, and advised the trooper that he could detect an odor of intoxicants coming from Boggs. The trooper traveled to Boggs's residence, and arrived at approximately 3:04 a.m. Upon initial contact with Boggs, the trooper observed injuries consistent with an accident. Boggs admitted he had been driving his vehicle, and stated that he lost control when he swerved to avoid hitting a deer. Boggs advised that he did not contact emergency services after the accident "because he was afraid" and because his cell phone battery died. Boggs said he started walking home, and that someone eventually stopped and gave him a ride. The trooper detected a moderate odor of intoxicants from Boggs as he spoke. The trooper observed that Boggs's speech was slurred and mumbled, and that his eyes were glassy, watery, and bloodshot. The trooper noticed that Boggs staggered and swayed when he walked. When asked if he had been drinking, Boggs told the trooper he had two beers, beginning at 9:00 p.m. before driving, and that he wrecked his vehicle at 11:00 p.m. Boggs twice told the trooper that he had not consumed any alcohol since the accident.
The trooper conducted several field sobriety tests while at Boggs's residence, each suggesting that Boggs was impaired. Boggs submitted to a preliminary breath test which indicated positive for alcohol. Boggs was arrested on suspicion of driving while intoxicated. The trooper contacted an ambulance and Boggs was taken to the hospital to be examined for his injuries. While there, Boggs submitted to providing a sample of his blood. At 4:41 a.m., the blood sample showed Boggs had a blood alcohol content ("BAC") of .105 percent.
On December 14, 2016, the Director held an administrative hearing and suspended Boggs's driving privileges. Boggs filed a timely petition for a trial de novo , and a hearing was conducted in the Circuit Court of Henry County, Missouri. At that hearing, the investigating trooper testified, and the Director introduced several exhibits, including the trooper's accident report, the trooper's alcohol influence report, and a video of the trooper's interaction with Boggs. No other evidence was submitted by the Director, and Boggs did not testify.
On August 4, 2017, the trial court entered its judgment ("Judgment") finding that "the evidence adduced by the Director was credible, but it was also contradictory in some respects." The court ruled that the evidence was insufficient to support a finding of probable cause to arrest Boggs for an alcohol-related traffic offense. The trial court further found that the evidence was insufficient to establish that Boggs was driving with a BAC of .08 percent or higher. The Judgment set aside the suspension of Boggs's driving privileges.
The Director appeals.
Standard of Review
"A trial court's judgment in a driver's license revocation case is reviewed as any court-tried civil case." Rothwell v. Dir. of Revenue , 419 S.W.3d 200, 203 (Mo. App. W.D. 2013). "In an appeal from a court-tried civil case, we will affirm the trial court's judgment unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law." McKay v. Dir. of Revenue , 382 S.W.3d 119, 121 (Mo. App. W.D. 2012) (citing *697 White v. Dir. of Revenue , 321 S.W.3d 298, 307-08 (Mo. banc 2010) ). "The evidence and reasonable inferences drawn therefrom are viewed in the light most favorable to the trial court's judgment and all contrary evidence and inferences are disregarded." Rothwell , 419 S.W.3d at 203.
Analysis
In its sole point on appeal, the Director argues that the trial court erroneously applied the law when it set aside the suspension of Boggs's driving privileges because the trial court failed to consider Boggs's admission that he had not consumed alcohol since his accident. The Director argues that Boggs's admission, coupled with the uncontested evidence that Boggs's BAC exceeded .08 percent at the time of his arrest, "was sufficient evidence to establish probable cause for his arrest and that he had been driving while his BAC was at least .08%." [Appellant's Brief, p. 11]
Section 302.505.1 requires the Director to:
suspend or revoke the license of any person upon its determination that the person was arrested upon probable cause to believe such person was driving a motor vehicle while the alcohol concentration in the person's blood, breath, or urine was eight-hundredths of one percent or more by weight, based on the definition of alcohol concentration in section 302.500[.]
(Emphasis added.) "To establish a prima facie case for suspension of a driver's license pursuant to section 302.505.1, the Director of Revenue must present evidence that, at the time of the arrest: (1) the driver was arrested on probable cause for violating an alcohol-related offense; and (2) the driver's [blood-alcohol concentration] exceeded the legal limit of .08 percent."[2] Shanks v. Dir. of Revenue , 534 S.W.3d 381, 386 (Mo. App. W.D. 2017).
The alcohol-related offense for which Boggs was arrested was driving while intoxicated pursuant to section 577.010. "A person commits the offense of driving while intoxicated if he or she operates a vehicle while in an intoxicated condition." Section 577.010.1. Thus, to establish a prima facie case for suspension of Boggs's driver's license pursuant to section 302.505.1, the Director was required to establish that Boggs was arrested on probable cause for driving while intoxicated, and that Boggs's BAC exceeded .08 percent while he was driving. It was contested at Boggs's hearing whether the trooper had probable cause to arrest Boggs for driving while intoxicated. And though there was not dispute at Boggs's hearing that Boggs's BAC exceeded the legal limit of .08 percent at the time of his arrest, it was contested that Boggs's BAC exceeded .08 percent while he was driving.
The trial court found that the Director failed to present sufficient evidence to establish *698 probable cause to arrest Boggs for driving while intoxicated:
The evidence was that [Boggs] was involved in an accident at approximately 11:00 p.m. The arresting officer's first contact with [Boggs] was at approximately 3:00 a.m., four hours later. While the field sobriety tests performed by the arresting officer may have indicated that [ ] [Boggs] was intoxicated at the time those tests were performed, there is insufficient evidence that [Boggs] was intoxicated at the time of the accident, some four hours earlier . No one observed [Boggs] at the scene of the accident or around the time of the accident. There was insufficient probable cause to arrest [Boggs] for an alcohol-related traffic offense.
The trial court also found that the Director failed to present sufficient evidence to establish that Boggs's BAC exceeded .08 percent while he was driving:
While [Boggs] stipulated to admission of the blood test results, which indicated a blood alcohol content of .105% at 4:41 a.m., there was insufficient evidence for the Court to determine what [Boggs's] blood alcohol content may have been at the time he was operating the motor vehicle, some five and a half hours earlier .
(Emphasis added.) In short, the trial court found that the Director's evidence was insufficient to sustain its burden to establish a prima facie case for suspending Boggs's driving privileges.
The Director challenges both of the trial court's sufficiency of the evidence findings. We address the findings separately.
Probable Cause to Arrest
"Probable cause to arrest exists when an arresting officer's knowledge of particular facts and circumstances is sufficient to warrant a prudent person's belief that a suspect has committed an offense." Shanks , 534 S.W.3d at 387-88 (quoting Stolle v. Dir. of Revenue , 179 S.W.3d 470, 471 (Mo. App. E.D. 2005) ). " 'Probable cause must exist at the time of the arrest,' such that the Director of Revenue may not rely on information an officer discovers subsequent to an arrest to establish probable cause." Id. at 387 (quoting Domsch v. Dir. of Revenue , 767 S.W.2d 121, 123 (Mo. App. W.D. 1989) ). In examining the sufficiency of the evidence to establish probable cause for Boggs's arrest, our inquiry is thus focused on the information available to the trooper at the time of Boggs's arrest. It is irrelevant to this inquiry that after his arrest, Boggs's BAC was determined to be .105 percent.
The only evidence presented by the Director about the time of Boggs's accident was Boggs's statement to the trooper that it occurred at around 11:00 p.m. The trooper was not dispatched to the scene of the accident until approximately 2:07 a.m., and did not arrive to the scene until 2:37 a.m. The trooper found blood inside the vehicle, and determined that something had caused the vehicle's driver to swerve, overcorrect and roll into a ditch. The trooper found no alcohol containers near the scene or in the vehicle. Neither the investigating trooper nor any other witness observed Boggs at the scene of the accident.
The trooper first encountered Boggs at his residence at approximately 3:04 a.m., four hours after the accident. Boggs had injuries consistent with being in an accident. Boggs told the trooper he had swerved to avoid hitting a deer, a statement that was consistent with the trooper's accident investigation. Boggs told the trooper he drank two beers after 9:00 p.m., and denied having anything to drink after the accident. The field sobriety tests conducted by the trooper between 3:00 a.m. and Boggs's arrest at 3:24 a.m., the trooper's *699 observations of Boggs during that same time frame, and a preliminary breath test, all indicated that Boggs was intoxicated at approximately 3:00 a.m. However, the trooper admitted on cross-examination that the field sobriety tests could not indicate whether Boggs was intoxicated at the time of the accident, as they were administered more than four hours after the accident.
The Director presented no direct evidence about Boggs's intoxicated condition at the time of the accident. The only evidence offered by the Director on this contested subject was the trooper's opinion that he could infer from "conversations ... had with Mr. Boggs and his admissions to what he had drank in the timeline of when he had consumed alcohol" that Boggs was intoxicated at the time of the accident.
The trial court found the Director's evidence credible but contradictory, and found the evidence was insufficient to support probable cause to arrest Boggs for driving while intoxicated. We review this probable cause determination de novo for an abuse of discretion. White v. Dir. of Revenue , 321 S.W.3d 298, 310 (Mo. banc 2010) (citing Ornelas v. United States , 517 U.S. 690, 695 n.3, 697, 699, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996) ). Ornelas explains this standard:
[D]eterminations of reasonable suspicion and probable cause should be reviewed de novo on appeal. Having said this, we hasten to point out that a reviewing court should take care both to review findings of historical fact only for clear error and to give due weight to inferences drawn from those facts by resident judges and local law enforcement officers.
517 U.S. at 699, 116 S.Ct. 1657. Background facts supplement the historical facts of a particular case and include context drawn from "the distinctive features and events of the community." Id. Thus, "background facts provide a context for the historical facts, and when seen together yield inferences that deserve deference." Id. In its application, the probable cause standard of review described in White , and drawn from Ornelas , first requires a determination of the historical facts--that is the facts that led to the stop, search, or arrest. Ornelas , 517 U.S. at 696, 116 S.Ct. 1657, White , 321 S.W.3d at 310. Then, "viewed from the standpoint of an objectively reasonable police officer," we determine whether these historical facts "amount to reasonable suspicion or probable cause. Ornelas , 517 U.S. at 696, 116 S.Ct. 1657, White , 321 S.W.3d at 310. "The ... second [part of this analysis] is a mixed question of law and fact: '[T]he historical facts are admitted or established, the rule of law is undisputed, and the issue is whether the facts satisfy the [relevant] statutory [or constitutional] standard, or to put it another way, whether the rule of law as applied to the established facts is or is not violated.' " White , 321 S.W.3d at 310 (quoting Ornelas , 517 U.S. at 696-97, 116 S.Ct. 1657 ). We thus give deference to the trial court's determination of the historical facts, and to reasonable inferences drawn from those facts as influenced by background facts or context. However, the ultimate assessment of whether the historical facts and the reasonable inferences drawn from those facts satisfy the legal standard for probable cause remains subject to de novo review.
Here, the historical facts and the inferences to be drawn from those facts were contested, as the trooper (the Director's witness) was cross-examined by Boggs. White , 321 S.W.3d at 308 ("To contest evidence, a party need not present contradictory or contrary evidence[,]" but may contest by cross-examination). Though the trial court determined that the Director's *700 evidence was credible, the trial court also determined that the Director's evidence was insufficient to permit the trooper to reasonably believe that Boggs was intoxicated when he was driving his vehicle at approximately 11:00 p.m.
The Director disputes the conclusion reached by the trial court, and argues that because Boggs told the trooper he had not consumed any alcohol after the accident, the trial court was required to find as a matter of law that the trooper had probable cause to believe that Boggs was driving while intoxicated. We disagree. Even accepting that the trial court deemed the trooper's testimony to be credible, there is no authority for the proposition that a driver's statement that no alcohol was consumed after an accident establishes, as a matter of law, probable cause to arrest the driver for driving while intoxicated hours earlier. To the contrary, "because the mosaic which is analyzed for a reasonable-suspicion or probable-cause inquiry is multi-faceted, 'one determination will seldom be a useful 'precedent' for another.' " Ornelas , 517 U.S. at 698, 116 S.Ct. 1657 (quoting Illinois v. Gates , 462 U.S. 213, 238, n.11, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983) ). In other words, the presence of a particular historical fact in a case is not susceptible to a bright-line rule requiring a finding of probable cause.
The Director's reliance on Stuart v. Director of Revenue , 488 S.W.3d 743 (Mo. App. E.D. 2016), and Shanks v. Director of Revenue , 534 S.W.3d 381 (Mo. App. W.D. 2017), is unavailing. In both cases, the trial court's determination to uphold the Director's suspension of a driver's license was affirmed on appeal. In Stuart , a trial court sustained the Director's suspension of driving privileges when an investigating officer found a license plate at a crash scene; located a heavily damaged vehicle missing a matching license plate at the vehicle owner's home; found the vehicle's owner in an "obviously intoxicated condition;" and obtained a statement from the vehicle's owner that he had been driving the vehicle when it crashed, had been drinking before the accident, and had not been drinking after the accident. Stuart , 488 S.W.3d at 745-46, 749. In Shanks , a driver was found intoxicated and passed out while slumped in the driver's seat of his vehicle hours after an accident; the driver told the investigating officer that he had been drinking the previous night and had been driving at the time of the accident; and the investigating officer observed no alcohol containers or other evidence to indicate that the driver had access to alcohol after crashing his vehicle. Shanks , 534 S.W.3d at 384-87.
Though the historical facts in Shanks and Stuart are similar to this case, Shanks and Stuart are distinguishable from this case for the simple reason that the trial court concluded from the historical facts that it was reasonable to infer that the subject driver was intoxicated while driving, and that as a result, sufficient evidence was presented to support a finding of probable cause to arrest. Shanks and Stuart do not stand for the proposition that evidence no alcohol was consumed after an accident constitutes sufficient evidence of probable cause to arrest for driving while intoxicated as a matter of law.
More instructive is Ayler v. Director of Revenue , 439 S.W.3d 250 (Mo. App. W.D. 2014). In Ayler , we affirmed a trial court's determination to set aside a driver's license suspension. 439 S.W.3d at 256-58. In Ayler , a Missouri Highway Patrol trooper was advised of a wreck at 2:12 a.m. on an ice-covered road. Id. at 252. Two men at the scene stated they had been passengers in the vehicle, and that the driver had been Ayler. Id. One of the passengers said the accident happened sometime between *701 11:50 p.m. and 12:25 a.m. Id. The evidence was contradictory regarding the amount Ayler drank before the accident. Id. The trooper's initial contact with Ayler was at 2:42 a.m. Id. The trooper smelled alcohol on Ayler; noted that Ayler's eyes were watery, bloodshot and droopy; noted that Ayler's face was flushed; and noted that Ayler's speech was slurred and mumbled. Id. at 253. No field sobriety tests were performed, and Ayler refused a preliminary breath test. Id. The trial court found that these historical facts were established by credible evidence, but that the historical facts were insufficient to permit a reasonable inference that probable cause existed to arrest Ayler for driving while intoxicated. Id.
On appeal, the Director argued, just as the Director argues here, that "given the historical facts as found to exist by the trial court, the trial court erroneously applied the law of 'probable cause' to the undisputed historical facts." Id. at 256. However, just as in this case, there was no direct evidence offered in Ayler about whether Ayler was intoxicated at the time of his accident. Id. at 258. As in this case, the only evidence offered on this contested issue in Ayler was the trooper's "opinions on alcohol consumption in the context of time." Id. at 256. In reviewing the inference drawn by the trial court from the historical facts, we concluded in Ayler that:
Depending upon the trial court's assessment of the contested evidence of probable cause as to intoxication at the time of the accident , either a conclusion that probable cause existed or was lacking was sustainable under the record. We cannot say as a matter of law that the trial court clearly erred in finding that the Trooper did not have reasonable grounds to believe Ayler was driving a motor vehicle while in an intoxicated condition.
Id. at 258.
Analogously, though the Director's evidence in this case was deemed credible albeit contradictory, it was nonetheless deemed insufficient to sustain the Director's burden. Boggs's statement to the trooper about consuming two beers between 9:00 p.m. and the time of his accident, and his statement to the trooper about consuming no alcohol after the accident are contradictory, given Boggs's plainly intoxicated state at 3:00 a.m. Yet, beyond Boggs's statement that he drank two beers before the accident, no other evidence was offered about Boggs's condition at the time of the accident except the trooper's testimony that he inferred that Boggs was intoxicated at the time of the accident based on his condition at 3:00 a.m. Though the trooper's testimony was deemed credible, that simply means the trial court accepted as true that the trooper believed Boggs was intoxicated at the time of the accident. That does not, however, bind the trial court to conclude that the trooper's inference from the historical facts was reasonable. Instead, the trial court remained free to draw its own conclusion that the historical facts were insufficient to permit an inference that Boggs was intoxicated at 11:00 p.m. When evidence is contested, and when different inferences may be drawn from the historical facts, no error can be found in a trial court's assessment of contested evidence. See Ayler , 439 S.W.3d at 258. As instructed by Ornelas , we are "to give due weight to inferences drawn from [historical facts] by resident judges." 517 U.S. at 699, 116 S.Ct. 1657. Because the trial court concluded that it could not be reasonably inferred from the historical facts that Boggs was intoxicated at 11:00 p.m. (the time of his accident), the trial court properly applied *702 the law to the historical facts to conclude that there was insufficient evidence to establish probable cause to arrest Boggs for driving while intoxicated.
The trial court did not erroneously apply the law in finding that the Director presented insufficient evidence to establish that probable cause existed to arrest Boggs for driving while intoxicated.
BAC of .08 Percent or Higher
For the reasons already explained in connection with the trial court's probable cause to arrest determination, the trial court did not erroneously apply the law in determining that the Director presented insufficient evidence to establish that Boggs's BAC exceeded .08 percent while he was driving.
The Director's point on appeal is denied.
Conclusion
The trial court's judgment is affirmed.
All concur

All statutory references are to RSMo 2000 supplemented through the date of Boggs's arrest in March 2016.

Though our cases sometimes refer to the Director's need to establish that a driver's BAC is in excess of .08 percent "at the time of the [driver's ] arrest ," Shanks , 534 S.W.3d at 386 (emphasis added), in fact, section 302.505 provides that the Director must establish "the person was arrested upon probable cause to believe such person was driving a motor vehicle while the alcohol concentration in the person's blood, breath, or urine was eight-hundredths of one percent or more by weight...." In other words, the Director must establish that the person was driving with a BAC in excess of .08 percent. The distinction between this concept and whether a driver had a BAC of .08 percent at the time of arrest is of heightened importance where a significant period of time has elapsed between the driver's operation of a motor vehicle and the driver's first encounter with law enforcement. The Director should be mindful that additional evidence may be required to make a prima facie case to suspend a driver's license in such cases than that required where law enforcement encounters a driver at or near the time of operation of a motor vehicle.