

# In the
# Missouri Court of Appeals
## Western District

| | | |
|---|---|---|
| RUBEN VASQUEZ, | ) | |
| | ) | |
| Appellant, | ) | WD84700 |
| | ) | |
| v. | ) | OPINION FILED: August 16, 2022 |
| | ) | |
| DIRECTOR OF REVENUE, | ) | |
| | ) | |
| Respondent. | ) | |

**Appeal from the Circuit Court of Clay County, Missouri**
The Honorable Louis Angles, Judge

Before Special Division: Gary D. Witt, Chief Judge, Presiding, Thomas N. Chapman, Judge, and Zel Fischer, Special Judge

Ruben Vasquez ("Vasquez") appeals the judgment of the Circuit Court of Clay County, Missouri ("trial court"), following a bench trial, affirming the Director of Revenue's ("Director") decision to suspend Vasquez's driving privileges. On appeal, Vasquez argues the trial court erred in ruling Vazquez's arrest was supported by probable cause that he committed an alcohol related offense in that there was insufficient evidence Vasquez was intoxicated at the time of the automobile accident. Finding no error, we affirm.

## Factual Background[1]

On June 2, 2020, at 4:35 p.m., two Clay County Sheriff officers received a dispatch of a single-car accident. Deputy Edwards arrived at the scene three minutes after the dispatch and observed a 2002 red Chevrolet Blazer backed into a deep ditch adjacent to a residential driveway. Deputy Edwards contacted Vasquez, who was seated on the grass near the rear passenger side of the vehicle. Deputy Edwards conducted an accident investigation, obtained Vasquez's information, and inquired into whether Vasquez needed medical attention.

Deputy Zubeck arrived approximately ten minutes after the dispatch. When he arrived, Deputy Edwards informed Deputy Zubeck that there was alcohol inside the vehicle. Deputy Zubeck began speaking with Vasquez, who was still sitting on the grass near the rear of the vehicle. Vasquez was unable to stand up from a seated position without assistance from the officer and almost fell to the ground after he stood up. Vasquez informed Deputy Zubeck that he was 74 years of age and the owner of the vehicle. There was no one else around the vehicle when the officers arrived. Deputy Zubeck conducted a driving while intoxicated (DWI) investigation while Deputy Edwards conducted the accident investigation. Deputy Zubeck observed Vasquez's pupils were dilated, and his eyes were "watery or bloodshot." Deputy Zubeck noticed a "moderate odor of an intoxicating beverage" coming from Vasquez's person. Vasquez told Deputy Zubeck that he was taking several medications, including muscle relaxers and pain killers, but could

---

[1] We view the evidence in the light most favorable to the trial court's judgment. *Collier v. Dir. of Revenue,* 603 S.W.3d 714, 715 n.1 (Mo. App. W.D. 2020).

not remember the particular names of the medications. Deputy Zubeck asked Vasquez if he had had anything to drink that day, and Vasquez responded that he had consumed about four beers. Vasquez rated his own level of intoxication as three on a scale of one to ten, with one being completely sober and ten being the drunkest he had ever been in his life. Vasquez also admitted that he had accidentally backed the truck into the ditch next to the driveway while attempting to turn around using the residential driveway. Both rear tires of the vehicle went into the ditch beside the driveway. The ditch contained a metal culvert pipe for taking water under the roadway. The pipe was bent by the impact of the vehicle.

Deputy Zubeck attempted to perform the Horizontal Gaze Nystagmus ("HGN") test as part of the field sobriety tests. Vasquez was unable to stand without assistance in order to take the test, almost falling several times while trying to stand with his feet together to take the test. Deputy Zubeck had him lean against the hood of his vehicle for support to attempt to take the HGN test. Vasquez could not complete the test as he was unable to follow the instructions and Deputy Zubeck feared Vasquez would fall. Deputy Zubeck did not attempt any other standardized field sobriety tests because Vasquez was "very unsteady on his feet," and Deputy Zubeck had to physically hold Vasquez up during their interactions to keep him from falling down. The video of the interaction between the deputies and Vasquez confirms his inability to stand without assistance. Vasquez submitted to a preliminary breath test ("PBT"), which returned a positive result for the presence of alcohol. Deputy Zubeck called for medical assistance to determine if Vasquez needed to be transported to a medical facility. An ambulance arrived, and it was determined that he was "medically stable." Based on the interaction with Vasquez, Deputy Zubeck arrested

3

Vasquez for driving while intoxicated and placed him in handcuffs. Vasquez required both deputies to assist him in walking to the patrol car to keep him from falling. Vasquez was transported to the Clay County Detention Center. There, Vasquez submitted to a breath test, which produced a result of .257% blood alcohol concentration ("BAC").

Deputy Zubeck interviewed Vasquez at the Clay County Detention Center to prepare an Alcohol Influence Report ("AIR"), which was admitted over objection at trial. Vasquez stated he had been drinking beer at his home from 2:00 p.m. until 3:00 p.m. Vasquez stated he had backed out of a driveway but was not involved in a motor vehicle crash.

Deputy Zubeck testified that, during the DWI investigation at the location of the accident, he did not check for intoxicants in or around the vehicle. Rather, Deputy Edwards informed Deputy Zubeck that there was alcohol located inside the car. Deputy Edwards first noticed a brown bottle in the cupholder on the console of the truck upon making first contact with Vasquez. Deputy Edwards was later able to identity the brown bottle as a beer bottle while conducting an inventory search of the vehicle for the tow report. Deputy Edwards testified that the beer bottle had been opened and was filled up to the "shoulders" of the bottle, and the bottle cap had been placed back on the top of the bottle. He also testified that the bottle was cold to the touch and was showing condensation. During the inventory search, Deputy Edwards found an opened 18-pack Miller Lite box in the back seat, which contained twelve unopened containers. He did not find any empty alcohol containers inside or outside of the vehicle.

4

Following an administrative hearing, the Director suspended Vasquez's driving privileges, and Vasquez filed a petition for trial *de novo* in the trial court. *See* section 302.505.[2] The Director requested the trial court issue findings of fact and conclusions of law, pursuant to Rule 73.01(c).[3] Following a bench trial, the trial court ruled in favor of the Director and upheld the suspension of Vasquez's driving privileges. The trial court found the information admitted at trial, including the AIR and the testimonies of Deputies Edwards and Zubeck, to be credible. This appeal follows.

**Standard of Review**

A trial court's judgment in driver's license suspension and revocation cases is reviewed as any court-tried civil case. *White v. Dir. of Revenue*, 321 S.W.3d 298, 307 (Mo. banc 2010). "In an appeal from a court-tried civil case, we will affirm the trial court's judgment unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law." *Boggs v. Dir. of Revenue*, 564 S.W.3d 693, 696 (Mo. App. W.D. 2018) (internal citations omitted). "The evidence and reasonable inferences drawn therefrom are viewed in the light most favorable to the trial court's judgment and all contrary evidence and inferences are disregarded." *Id.*

**Analysis**

Vazquez's sole point on appeal alleges the trial court erred in finding there was probable cause to arrest Vasquez for driving while intoxicated because there was insufficient evidence as to whether Vazquez was intoxicated at the time of the accident

---

[2] All statutory references are to Revised Statutes of Missouri (2016), as currently updated by supplement, unless otherwise indicated.

[3] All rule references are to Missouri Court Rules (2021), unless otherwise indicated.

when he was operating the vehicle. "To establish a prima facie case for suspension of a driver's license pursuant to section 302.505.1, the Director of Revenue must present evidence that, at the time of the arrest: (1) the driver was arrested on probable cause for violating an alcohol-related offense; and (2) the driver's [blood-alcohol concentration] exceeded the legal limit of .08 percent." *Boggs*, 564 S.W.3d at 697 (quoting *Shanks v. Dir. of Revenue*, 534 S.W.3d 381, 386 (Mo. App. W.D. 2017)). Vasquez was arrested for driving while intoxicated, pursuant to section 577.010, which provides: "A person commits the offense of driving while intoxicated if he or she operates a vehicle while in an intoxicated condition." Therefore, the Director was required to establish that Vasquez was arrested on probable cause for driving while intoxicated, and that Vasquez's BAC exceeded .08 percent at the time of the driver's operation of the vehicle.[4]

The trial court found Vasquez's arrest for driving while intoxicated was supported by probable cause. The trial court found:

> In the present case, [Vasquez] admitted to driving and crashing his vehicle. The vehicle is owned by [Vasquez] and he was found seated near the vehicle. [Vasquez] exhibited many indicia of intoxication. He could not satisfactorily follow the instructions for the HGN test. The remaining field sobriety tests were not concluded due to safety concerns for [Vasquez] in that he could not stand without assistance. [Vasquez] indicated positive for the presence of alcohol on the PBT. All of this information taken together is sufficient to show that there was probable cause to arrest [Vasquez] for an alcohol related traffic offense.

---

[4] Vasquez argues solely that the arrest was not supported by probable cause and does not dispute the finding that his BAC exceeded .08 percent. Therefore, we do not consider Vasquez's post-arrest BAC in our review of the trial court's determination of probable cause. *See Boggs v. Dir. of Revenue*, 564 S.W.3d 693, 698 (Mo. App. W.D. 2018) ("In examining the sufficiency of the evidence to establish probable cause for Boggs's arrest, our inquiry is thus focused on the information available to the [officer] at the time of Boggs's arrest. It is irrelevant to this inquiry that after his arrest, Boggs's BAC was determined to be .105 percent.").

Vasquez argues there was insufficient evidence to establish probable cause for his arrest. "Probable cause, for purposes of section 302.505, will exist when the surrounding facts and circumstances demonstrate to the senses of a reasonably prudent person that a particular offense has been or is being committed." *White*, 321 S.W.3d at 309 (internal quotations omitted). "The trial court must assess the facts by viewing the situation as it would have appeared to a prudent, cautious, and trained police officer." *Id.* (internal quotations omitted). "The level of proof necessary to show probable cause under section 302.505 is substantially less than that required to establish guilt beyond a reasonable doubt." *Id.* (internal quotations omitted). Further, the officer may rely on circumstantial evidence, meaning "evidence that does not directly prove a fact in issue but gives rise to a logical inference that the fact exists." *Shanks*, 534 S.W.3d at 387.

In determining the deference appellate courts give to trial courts' probable cause determinations, the Missouri Supreme Court in *White*, quoting *Ornelas v. United States*, 517 U.S. 690, 699 (1996), outlined a two-step analysis.

> The first part of the analysis involves only a determination of the historical facts, but the second is a mixed question of law and fact: "[T]he historical facts are admitted or established, the rule of law is undisputed, and the issue is whether the facts satisfy the [relevant] statutory or [or constitutional] standard, or to put it another way, whether the rule of law as applied to the established facts is or is not violated.

*White*, 321 S.W.3d at 310. "Likewise, this Court reviews probable cause determinations de novo under an abuse of discretion standard and gives deference to the inferences the trial court made from the historical facts, including the trial court's credibility determinations." *Id.* "[B]ut the ultimate assessment of whether the historical facts and

7

inferences satisfy the legal standard for probable cause remains subject to *de novo* review."

*Stanton v. Dir. of Revenue*, 616 S.W.3d 398, 407 (Mo. App. W.D. 2020). Moreover, as is the case here, "[w]hen the facts relevant to an issue are contested, the reviewing court defers to the trial court's assessment of the evidence." *White*, 321 S.W.3d at 308. A party can contest evidence through cross examination. *Id.*; *Ayler v. Dir. of Revenue*, 439 S.W.3d 250, 255 (Mo. App. W.D. 2014) ("[W]hen evidence is contested by disputing a fact in any manner, we defer to the trial court on factual issues, including the inferences the trial court made from the historical facts.").

The first step of the probable cause determination involves examining the historical facts and the reasonable inferences drawn therefrom. Historical facts are the facts that led to the stop, search, or arrest. *Stanton*, 616 S.W.3d at 407. Here, the historical facts presented at trial were sufficient to determine that probable cause supported Vasquez's arrest for driving while intoxicated. The historical facts showed that Deputies Edwards and Zubeck responded to a single vehicle crash on June 2, 2020, at approximately 4:35 p.m. in a residential neighborhood. Deputy Edwards arrived on the scene first and observed a 2002 Chevrolet Blazer in the ditch beside a driveway. It was a bright sunny day, and the ditch was clearly marked with a tall yellow post. The location of the vehicle and Vasquez's explanation of how the accident occurred indicate that Vasquez pulled into the driveway to turn around but pulled too far into the driveway and turned way too early to back onto the street causing his vehicle to go off of the driveway into the yard, past the tall yellow post marking the deep ditch, before backing into the ditch. This is consistent with impairment at the time of the operation of the vehicle.

8

Deputy Edwards contacted Vasquez, who was sitting on the grass in the yard near the vehicle. Vasquez admitted to Deputy Edwards that he had been driving the vehicle and had backed it into the ditch. Deputy Zubeck arrived and conducted a DWI investigation. Deputy Zubeck observed that Vasquez had dilated and bloodshot eyes, and Vasquez emitted an odor of intoxicants. Deputy Zubeck had to physically assist Vasquez in standing up, and Vasquez's balance and walking were significantly uncertain. Vasquez could not stand without the assistance of an officer or by leaning heavily on the hood of his vehicle. It took both officers to assist him in walking to the patrol car. Vasquez admitted he had been drinking beer earlier in the day and also stated that he had taken prescription muscle relaxer and pain medications. Deputy Zubeck attempted to conduct field sobriety testing, but Vasquez's lack of balance and inability to follow directions rendered the tests impossible. Vasquez's PBT test produced a positive result for the presence of alcohol. The estimated time of the accident was based only upon the dispatch call time, which occurred at 4:37 p.m. From these facts, and the reasonable inferences drawn therefrom, a reasonably prudent officer could determine that Vasquez committed the offense of driving while intoxicated.

Vasquez argues the trial court erred because there was insufficient evidence that he was intoxicated at the time of the accident, which was when he was operating the vehicle. Specifically, Vasquez argues the Director did not establish a time or approximate time of the operation or accident and that he had not consumed alcohol after his last operation of the vehicle; therefore, it is unclear whether Vasquez was driving his vehicle in an intoxicated condition. However, our cases have held that an arrest for an alcohol related

offense supported by probable cause can be established even though an officer does not know the exact time of the accident if there are sufficient facts to reasonably infer the driver was in an intoxicated condition at the time of the operation of the vehicle. *See Shanks*, 534 S.W.3d at 390; *Stanton*, 616 S.W.3d at 401. In *Stanton*, the officer arrived at the scene of a single car crash at approximately 3:30 p.m. and observed a vehicle that had struck a tree on the side of the road. *Stanton*, 616 S.W.3d at 401-02. The driver had walked to his parents' house after the accident and was then taken to the fire station to be evaluated in an ambulance. *Id.* at 402. The officer contacted the driver at the fire station before the driver was transported to the hospital. *Id.* The driver admitted to consuming three beers, had the odor of intoxicants, exhibited all six clues on the HGN, slurred speech and glassy, bloodshot eyes. At the hospital, the officer placed the driver under arrest for driving while intoxicated. *Id.* The officer estimated the time of the crash based on the time of the dispatch to be approximately 3:00 p.m. *Id.* at 408. On appeal, Stanton argued whether he was intoxicated when the officer first evaluated him was irrelevant because "the time of the accident was unknown or speculative." *Id.* In *Stanton*, although the officer did not know exactly when the accident occurred, we affirmed the trial court's judgment because the officer had reasonable grounds, i.e. probable cause, to believe Stanton had been operating the vehicle while he was intoxicated. *Id.* The automobile had left the roadway and struck a tree on a straight, dry gravel road during the day giving rise to an inference that his ability to operate a vehicle may have been impaired.

Similarly, in *Shanks*, an officer arrived at the scene of a vehicle crashed into a ditch at approximately 7:15 a.m. *Shanks*, 534 S.W.3d at 384. The officer observed the driver

"passed out behind the steering wheel, slumped over with his head in the passenger's seat." *Id.* The deputy woke the driver, who stated he had been drinking the previous night. *Id.* The officer noticed an odor of intoxicants coming from the driver, and the driver had unstable balance and slurred speech. *Id.* Although the driver later testified that the accident occurred around 2:00 a.m., the officer testified that, at the time of the arrest, the driver did not know at what time the accident had occurred. *Id.* at 385. He also testified that he did not notice any alcoholic beverage containers near or around the accident scene on the morning of the accident. *Id.* On appeal, we affirmed the trial court's judgment sustaining the suspension of the driver's driving privileges and held the driver's arrest for an alcohol related offense was supported by probable cause. *Id.* at 391. In so holding, we stated that the admissions of the driver as well as circumstantial evidence can be used to establish the probable cause to believe the person was intoxicated at the time they were operating the vehicle. *Id.* at 387. At the time the officer made the decision to arrest Shanks, the officer knew that the vehicle was in the ditch, Shanks was behind the wheel, Shanks admitted to driving the vehicle at the time of the accident, Shanks admitted to drinking the prior evening, the field sobriety tests and physical characteristics of Shanks were indicative of intoxication, and there was no evidence Shanks had access to alcohol after the accident. *Id.* We held this was sufficient for the trial court to find there was probable cause to find Shanks was intoxicated at the time he operated the vehicle.[5]

---

[5] The court in *Shanks* distinguished the difference between a finding of probable cause in a civil driver's license suspension case from a finding of beyond a reasonable doubt in a criminal case, citing *State v. Hatfield*, 351 S.W.3d 774 (Mo. App. W.D. 2011) as the appropriate standard in a criminal case as opposed to the probable cause finding in a civil license suspension case. *Shanks v. Dir. of Revenue*, 534 S.W.3d 381, 388 (Mo. App. W.D. 2017). ("There is a vast gulf between the quantum of information necessary to establish probable cause and the quantum of

11

In this case, although the exact time of the accident was unknown, Deputy Zubeck inferred from the totality of the circumstances that the accident had occurred close in time to the dispatch call. Deputy Zubeck was dispatched to the scene of a single car crash in a residential neighborhood at 4:35 in the afternoon. There, he observed Vasquez sitting on the grass next to a vehicle that was backed into a deep ditch. The way in which the vehicle was backed into the ditch was consistent with impairment of the driver. The ditch was clearly marked with a tall yellow post next to the driveway, and an unimpaired driver should have been able to easily pull into the wide driveway and back onto the street to turn around without ending up in the ditch. Vasquez admitted he was driving when the vehicle went into the ditch, and Deputy Zubeck observed multiple indicia of severe intoxication from Vasquez, including watery and blood shot eyes, dilated pupils, odor of intoxicants, inability to maintain balance to the point of not being able to stand or walk without significant assistance, and a positive result for the presence of alcohol on the PBT test. Vasquez admitted that he had consumed several beers earlier in the day. Although Deputy Zubeck did not know the exact time of the accident, given the nature of the accident and indicia of significant intoxication exhibited by Vasquez, the arrest for an alcohol related offense was supported by probable cause. And although the trial court did not make a specific finding regarding the time of the accident, "[a]ll fact issues upon which no specific findings are made shall be considered as having been found in accordance with the result reached." Rule 73.01(c). Therefore, we defer to the trial court's credibility determinations

evidence required to prove guilt beyond a reasonable doubt." *White* [*v. Dir. of Revenue*], 321 S.W.3d [298.] 309 [Mo. banc 2010].").

and inferences drawn from the contested historical facts regarding the time of the accident. *See Stanton*, 616 S.W.3d at 408 ("Since the trial court found in favor of the Director and did not make a specific finding of fact on this issue, the trial court must have found the deputy's report and testimony credible.").

Vasquez argues this case is similar to previous cases in which we found a driver's arrest was not supported by probable cause, namely *Domsch v. Director of Revenue*, 767 S.W.2d 121 (Mo. App. W.D. 1989); *Stolle v. Director of Revenue*, 179 S.W.3d 470 (Mo. App. E.D. 2005); *Boggs*, 564 S.W.3d at 693; *State v. Davis*, 217 S.W.3d 358 (Mo. App. W.D. 2007); and *State v. Wilhite*, 550 S.W.3d 141 (Mo. App. W.D. 2018). All of these cases are distinguishable.

In both *Davis* and *Wilhite*, we reversed a *criminal* conviction of driving while intoxicated where there was insufficient evidence to establish beyond a reasonable doubt that the driver was intoxicated at the time of the accident. *See Davis*, 217 S.W.3d at 361; *Wilhite*, 550 S.W.3d at 147 ("Given the absence of evidence to establish the approximate time of Wilhite's operation of the vehicle and his lack of access to alcohol between the operation of the vehicle and the time the witnesses observed his intoxication, the State failed to prove beyond a reasonable doubt that he operated a vehicle while intoxicated."). But Vasquez "is not contesting the sufficiency of the evidence to support a criminal conviction for driving while intoxicated beyond a reasonable doubt. He has contested only the sufficiency of the evidence to find probable cause to arrest him for driving while intoxicated, an element of a prima facie case for suspension of a driver's license." *Shanks*, 534 S.W.3d at 387. As previously noted there is a vast difference between the evidence

13

necessary to establish probable cause and the evidence required to prove guilt beyond a reasonable doubt. *See Shanks*, 534 S.W.3d at 388. Therefore, Vasquez's reliance on *Davis* and *Wilhite* is unavailing.

Vasquez also cites several suspension/revocation cases in which we held probable cause did not support the driver's arrest for an alcohol related offense. For instance, in *Domsch*, the officer responded to a report of a two-vehicle accident. 767 S.W.2d at 122. One of the drivers had fled the scene in his vehicle, and the officer later found the vehicle parked at a restaurant as the driver ate inside the restaurant while apparently intoxicated. *Id.* There, the officer arrested the driver for driving while intoxicated, and the Director subsequently suspended his driving privileges. *Id.* However, the trial court reinstated his driving privileges upon a finding that the officer did not have probable cause to arrest the driver for an alcohol related offense. We affirmed, holding that "at the time of [the driver's] arrest, [the officer] could not have known [the driver's] condition at the time of the accident" because the driver "had the better part of one hour and forty minutes to obtain alcohol." *Id.* at 123-24.

However, this case is distinguishable from *Domsch*. In *Domsch*, we affirmed the trial court's finding that the credible historical facts failed to establish probable cause. Here, the trial court found sufficient, credible historical facts to establish probable cause. Vasquez never left the scene of the accident, Vasquez admitted to drinking beer earlier in the day, and Vasquez was extremely impaired to the extent he could not even stand up without assistance. Unlike *Domsch*, in which we stated, "The mind boggles in contemplating all of the opportunities respondent had for obtaining alcohol during the

14

intervening hour and forty minutes[,]" *id.* at 124, Deputy Zubeck had probable cause to believe Vasquez consumed alcohol *before* the accident and that Vasquez was intoxicated at the time of the accident. In this case it is difficult to conceive how Vasquez could have consumed enough alcohol to reach his highly inebriated state between the time of the accident and the arrival of the officers at the scene of the accident.

The remaining cases cited by Vasquez, namely *Stolle* and *Boggs,* are similarly distinguishable in that, in both cases, we held the officer's arrest of the driver at the driver's home hours after the accident, when the officer did not know when the accident had occurred, did not give rise to probable cause to arrest for an alcohol related offense. *See Stolle*, 179 S.W.3d at 472 ("Officer did not know when Driver consumed the alcoholic beverages, and the only field sobriety test Driver was given was administered improperly."); *Boggs*, 564 S.W.3d at 701-02 ("Because the trial court concluded that it could not be reasonably inferred from the historical facts that Boggs was intoxicated at 11:00 p.m. (the time of his accident), the trial court properly applied the law to the historical facts to conclude that there was insufficient evidence to establish probable cause to arrest Boggs for driving while intoxicated.").

Finally, Vasquez's reliance on *Domsch*, *Stolle*, and *Boggs* is unpersuasive for the simple reason that, in each case, the trial court concluded from the credible historical facts that it was unreasonable to infer that the driver was intoxicated while driving, and that as a result, insufficient evidence was presented to support a finding of probable cause to arrest. In each case, we affirmed the trial court's judgment because the trial court did not erroneously apply the law to the historical facts and inferences drawn therefrom. "When

15

evidence is contested, and when different inferences may be drawn from the historical facts, no error can be found in a trial court's assessment of contested evidence." *Boggs*, 564 S.W.3d at 701. This is not to say that every determination of the trial court regarding probable cause must be affirmed; however, Vasquez does not cite to, and our independent research yields, no appellate civil cases in which we reversed a trial court's determination of probable cause solely on the issue of whether an officer's judgment as to the time of the accident was unreasonable. As in this case, "[d]epending upon the trial court's assessment of the contested evidence of probable cause as to intoxication *at the time of the accident*, either a conclusion that probable cause existed or was lacking was sustainable under the record." *See Ayler*, 439 S.W.3d at 258 (affirming the trial court's determination that there was insufficient evidence to support a finding of probable cause). Therefore, we cannot say as a matter of law that the trial court clearly erred in finding Deputy Zubeck had probable cause to believe Vasquez was driving while intoxicated.

Point denied.

### Conclusion

For the foregoing reasons, the judgment of the trial court is affirmed.

_____
Gary D. Witt, Judge

All concur